Louis E. WOLCHER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 14109.

United States Court of Appeals, Ninth Circuit.

Dec. 28, 1954.

Rehearing Denied March 16, 1955.

Leo R. Friedman, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Robert H. Schnacke, Asst. U. S. Atty., Melvin L. Sears, Regional Counsel, Robert G. Thurtle, Trial Attorney, Int. Rev. Service, San Francisco, Cal., for appellee.

Before HEALY, ORR, and POPE, Circuit Judges.

HEALY, Circuit Judge.

This matter is before us on appeal from a judgment of conviction on a charge of attempted income tax evasion.

Appellant had earlier been convicted on the same charge, and we reversed for error committed in the course of the trial. Wolcher v. United States, 9 Cir., 200 F.2d 493. The background of the case is rather fully developed in that opinion, and we shall here touch but briefly on the evidence. During the tax year involved (the fiscal year ending June 30, 1944) appellant collected large sums from the sale at wholesale of whisky at overceiling prices. Wolcher himself was not a wholesaler of whisky, but operated or was interested in a number of taverns or bars. The sales in question were made through San Francisco liquor wholesalers. The purchasers gave checks to the wholesalers in the amount of the ceiling price and paid the overceiling price in cash directly or in-directly to Wolcher. Wolcher reported no income from the sales.

The government through various witnesses established the details of these transactions, and Wolcher himself admitted them while on the stand. He contended only that he made no profit from the operations for the reason that in acquiring whisky he himself was obliged to make overceiling payments to one William Gersh in amounts which approximately offset the cash paid him by the buyers. At the former trial Gersh testified for the government that the large sum of money sent him by Wolcher was to be in payment for coin machines which Gersh thereafter attempted unsuccessfully to buy for Wolcher. He said the money was returned except for a minor amount spent in acquiring for Wolcher a number of phonographs. Gersh did not testify on the second trial.

The sufficiency of the evidence to sustain the conviction is not disputed. What is claimed is that certain prejudicial errors were committed on the trial. The assignment most heavily relied on is an alleged error in the giving of an instruction. During the course of a lengthy charge to the jury the court said: "So that in my opinion brings the issue of the case down to a very simple (question), and that is this—that since the Government has proved and the defendant has admitted receiving the cash over ceiling prices, the issue is whether you do or do not believe the testimony and the story told by the defendant in the case. If you believe his story, then you should return a verdict of not guilty. If you are convinced beyond a reasonable doubt that his story should not be believed, then you are justified in returning a verdict of guilty."

It is argued that the instruction shifted the burden of proof from the government to appellant; that it took from the jury the question of whether the government's evidence established the charge beyond a reasonable doubt; that in effect it told the jury to disregard all other evidence in the case save the testimony

and story of the defendant and to decide his guilt or innocence solely upon his testimony; and that it told the jury to discount or ignore weaknesses in the government's case if the jurors found appellant's testimony to be unworthy of belief.

▮ Naturally the propriety of the instruction is to be considered in context. In the course of its charge the court gave the jury the following instruction: "The presumption is that the defendant is innocent and that presumption continues until such time as the Government has proved the guilt of the defendant beyond a reasonable doubt. The Government has the burden of proving the guilt of the defendant. That burden never shifts at any stage of the proceeding to the defendant. The defendant has no obligation of any kind to go forward and prove that he is innocent."

In immediate connection with the passage under attack, and as preliminary to it, the court gave the instructions shown on the margin.[1]

1. "The indictment in this case charges the defendant with wilfully and knowingly attempting to defeat and evade a large part of his income tax for the fiscal year ending June, 1944. The amount by which his net income is alleged to have exceeded the amount he reported on his return was approximately $45,000, as alleged in the indictment. The indictment was filed pursuant to a federal statute which makes it a criminal offense for any person to wilfully attempt in any manner to evade or defeat any tax imposed by the revenue laws of the United States. Now the defendant plead not guilty to that charge, and so that's the issue. Did he wilfully and intentionally attempt to evade the payment of income taxes due the United States for this fiscal year ending in June, 1944?

"Now the Government has the burden of proving that the defendant had taxable net income which he did not report, and that his act in so doing, failing to report it, was wilful and intentional.

"Now what do we mean when we speak about net income? Well, there is of course a very simple definition of it. Most of the men on the jury, I think, have heard it stated—maybe the ladies not so often, unless you are following some occupation—that it means the gross income, the total income that a man has, less the deductions or expenses or expenditures that the law says he can take from it; then what he has got left is his net income. Now that's what the defendant is charged in this case with non-payment of, is the net income. Now the taxable income of an individual includes anything by way of a gain or profit or income that he might get from salaries or wages, business, compensation for personal services, from trade or business, or sales or dealings in property; and it also includes any profit or income, net in character, that a man would obtain from any illegal transaction as well as a legal transaction. He has to account for all of his net income to the United States.

\* \* \* \* \* \* \*

"Now it is not necessary for the Government to prove the exact amount of the evasion, if any, nor the exact amount charged in the indictment. It would be sufficient if the Government shows that a substantial amount of money, consisting of net income, was wilfully evaded by the defendant in the case.

"Now I think it might be well if I very briefly stated to you what the Court believes is the issue of the case as it appears from the contentions respectively of the parties—the Government on the one hand and the defendant on the other hand. The Government contends, as appears from the argument made by Government counsel, that the cash monies that the Government proved the defendant received from the sale of liquor and which the defendant admitted that he received, were income and were net income, and that the whisky was purchased for the purpose of making a profit on it in its resale and not for the benefit of the defendant's own taverns, or his friends'. The Government contends that there were no records of the transaction kept by the defendant, and that that was so that he could keep the proceeds without paying any tax on them. The Government contends, as stated by the Government lawyer, that the defendant's account of sending large amounts in cash through the mail and otherwise to someone in the East is a story that is fabricated and should not be believed by you. That, I think very briefly, is the Government's contention.

"The defendant, on the other hand, admits that the black market transactions were had by the defendant, but contends that he made no profit in connection with these transactions and that therefore he had no net income and that therefore he

We think in the circumstances and in light of the accompanying instructions the jury could not rationally have understood the particular passage as shifting the burden of proof to the defendant, or as authorizing them to disregard frailties in the government's proof. As already said, the government had shown and the appellant had admitted that in the course of his liquor transactions during the tax year under inquiry he had received large sums in cash which he did not report as income. Obviously in such condition of the record he had some explaining to do; and, as the court indicated, he undertook specifically to show that the cash did not represent a profit because he had to pay out equivalent sums as overceiling acquisition costs.

■ The government had clearly established a prima facie case. Several of the circuits have held in prosecutions for income tax evasion that when a prima facie case has been made out the burden of going forward with the evidence is on the accused. United States v. Stayback, 3 Cir., 212 F.2d 313, 316–317; United States v. Smith, 3 Cir., 206 F.2d 905, 910; United States v. Link, 3 Cir., 202 F.2d 592, 593–594; United States v. Hornstein, 7 Cir., 176 F.2d 217, 220. The holdings appear well grounded. In this instance, however, the court instructed the jury that no duty of going forward rested on the accused, and we think it unnecessary to consider whether the decisions mentioned should be followed here. If the jury were convinced beyond a reasonable doubt that there was no truth in appellant's defense, then, certainly, as the court advised them, they were justified in returning a verdict of guilty. In sum, the instruction did not impose on appellant the burden of going forward. On the contrary, it left upon the government the onus of disproving his affirmative defense beyond a reasonable doubt.

■ The claim that the jury were told to disregard all evidence other than the testimony of the defendant himself presents a different question. It is pointed out that other witnesses had given testimony of a nature corroborative of the defendant—principally in respect of the great difficulty of obtaining whisky at the time other than on the black market; and it is said that in effect the jury were instructed to disregard these corroborative circumstances.

We think the point is without force. The problem confronting the jury was not whether whisky was difficult to obtain or whether appellant was able to obtain it. Admittedly he did obtain the whisky in question, albeit at what he said was a heavy overceiling price. The instruction could hardly be understood by the jury as telling them to disregard these, or other circumstances in evidence, which might tend to corroborate appellant's account of his transactions or the asserted necessity of his paying overceiling prices. The choice of the term "his story" may not have been a happy one, but we think in the framework of this case the term would naturally be understood as having reference to appellant's defense as a whole, including whatever corroboration it might have in the testimony of others or in the circumstances in evidence.

■ The second specification of error is the refusal of the court to give a requested instruction reading as follows:

is not chargeable with any evasion of income taxes; that he made no profit in the matter, because he had to pay out certain monies in connection with the transactions and that therefore the net result was that he had no profit in the matter, and that therefore he is not chargeable with a violation of federal statute.

"So that in my opinion brings the issue of the case down to a very simple (question), and that is this—that since the Government has proved and the defendant has admitted receiving the cash over ceiling prices, the issue is whether you do or do not believe the testimony and the story told by the defendant in the case. If you believe his story, then you should return a verdict of not guilty. If you are convinced beyond a reasonable doubt that his story should not be believed, then you are justified in returning a verdict of guilty."

"In determining whether the defendant made any profit on his purchases and sales of whiskey, you must determine, from all the evidence in the case, the actual amount the defendant paid for the whiskey and the actual amount the defendant received for the whiskey; in determining what amount the defendant paid for any whiskey involved in this case, you must add to the actual cost of said whiskey, any amounts of money, if any, that Wolcher paid to any person as a bonus or commission or fee for procuring such whiskey for him."

The proposed instruction was on its face misleading and there was no error in refusing to give it. The jury were not required to determine the "actual amount" the defendant paid for the whisky or the "actual amount" received for it. It was enough if he were found to have received net income which he failed to report. The instructions actually given sufficiently covered the general subject.

■ Another error claimed is the ruling of the court on a question asked appellant regarding a conversation he had had with William Gersh, when, as he said, he approached the latter in the spring of 1943 for the purpose of acquiring the whisky. The government objected to the interrogation as calling for self-serving or hearsay testimony, and the court sustained the objection.

A sufficient answer to the assignment is that the substance of the conversation was actually related by Wolcher, and is in the record. He testified that at that time he had a conversation with Gersh with respect to obtaining whisky, and that Gersh told him he (Gersh) had friends in the liquor business who could get it for him; that in the conversation Gersh mentioned the necessity of paying an overceiling price. Wolcher testified, of course, to the details of his asserted transactions with Gersh, the amounts of money he had sent the latter, the quantity of liquor received from him, and the amount of the overceiling price he had to pay him. Those, rather than details of conversations preliminary to them, were the essential matters Wolcher needed to get before the jury. Appellant made no offer of proof with respect to further items of the alleged conversation which might have been thought material. We think the ruling of the court in this respect was not prejudicial, and certainly it was not reversible error.

■ Finally it is claimed that the court erred in refusing to reopen the trial after the parties had rested, in order that appellant might call Gersh as a witness. Appellant was familiar with Gersh's testimony given at the former trial. He had had opportunity to subpena Gersh and knew where he lived. He claims that he was not aware of the presence of the witness in San Francisco until shortly before the time of making the request for a reopening, and he suggests that he had a right to rely upon the government to call Gersh. We think otherwise. Under the circumstances the court's refusal to reopen was well within its discretionary authority. Cf. Horowitz v. United States, 5 Cir., 12 F.2d 590; Brink v. United States, 6 Cir., 60 F.2d 231.

Affirmed.