Anthony FERNANDEZ, a/k/a Tony Fernandez, Burl Elton Dalgliesh and Carl G. Pratt, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18467.

United States Court of Appeals Ninth Circuit.

March 26, 1964.

Rehearing Denied April 29, 1964.

See also 9 Cir., 314 F.2d 289.

**900**

Howard R. Lonergan, Portland, Or., for appellants.

Brockman Adams, U. S. Atty., and John S. Obenour, Asst. U. S. Atty., Tacoma, Wash., for appellee.

Before MADDEN, Judge of the Court of Claims, and HAMLEY and HAMLIN, Circuit Judges.

HAMLEY, Circuit Judge:

Anthony Fernandez, Burl Elton Dalgliesh and Carl G. Pratt appeal from their convictions under various counts of two indictments charging interstate frauds ʼin violation of 18 U.S.C. § 2314 (1958), and conspiracy in violation of 18 U.S.C. § 371 (1958).[1]

Interstate frauds were charged in counts 2, 3, 4, 5, 6 and 7 of indictment No. 16845, and in count 1 of indictment No. 16870, all of these being substantive counts.[2] Conspiracy was charged in

1. There were also other defendants, one of whom was acquitted and the remainder of whom did not appeal.

2. Counts 2 and 3 of indictment No. 16845, in which only Fernandez was charged, relate to occurrences between March 21 and 27, 1958, in the course of which William E. Belcher was caused to travel from Oregon to Washington, and then to British Columbia, and five thousand dollars was transported from Oregon to Washington, pursuant to a scheme to defraud Belcher and certain banks in connection with the sale of timber near Tye, British Columbia.

Count 4, in which Fernandez and Joseph P. Delay were charged, relates to occurrences between July 8 and 15, 1958, in the course of which twenty-five thousand dollars fraudulently obtained from the Royal Bank of Canada was transported from Trail, British Columbia, to Washington and then to Oregon, in connection with Fernandez' efforts to arrange credit with that bank.

Count 5, in which Fernandez, Dalgliesh and Raymond Thomas Dual were charged, relates to occurrences between March 1 and 9, 1959, in the course of which

twelve thousand dollars fraudulently obtained from Edwin Cone and Cone Lumber Co., was transported from Oregon to Washington, in connection with the sale of timber near Youcalla, Oregon.

Count 6, in which Fernandez, Dalgliesh and Dual were charged, relates to occurrences between May 1 and 14, 1959, in the course of which a check for thirty thousand dollars fraudulently obtained from the Stevenson Co-Ply Co., was transported from Washington to Oregon and five thousand dollars was transported from Oregon to Washington in connection with the sale of timber near Kelso-Longview, Washington.

Count 7, in which Fernandez, Pratt and Dual were charged, relates to occurrences between April 28 and May 3, 1961, in the course of which John Casteel was caused to travel from Oregon to Washington, then to British Columbia and back to Washington and Oregon, pursuant to a scheme to defraud him of five thousand dollars or more.

Count 1 of indictment No. 16870, in which Fernandez, Pratt and Dual were charged, relates to occurrences on or about November 1, 1960, in the course of which Dominic Tarabochia was caused to

count 2 of indictment No. 16870.[3] Fernandez was charged and convicted on all of these counts.[4] Dalgliesh was charged on counts 5 and 6 of indictment No. 16845, and count 2 of the other indictment. He was acquitted on count 5 and convicted on the other two. Pratt was charged and convicted on count 7 of the first indictment and counts 1 and 2 of the second.

The allegations of the indictments and the evidence tending to support the convictions pertain to a series of timber and banking deals extending from February, 1958 to August, 1962. In the course of these transactions a number of businessmen, companies and banks were defrauded of large sums of money, ranging from five thousand to forty thousand dollars. The methods employed in perpetrating these frauds included the making of false representations, falsification of documents, false impersonation, and the surreptitious placing of documents in the luggage of intended victims. There were also overtones of possible foul play, as two intended victims of fraud, on separate occasions, suffered mysterious accidents and received resulting injuries, one in the wilds of British Columbia and the other in timber land east of Longview, Washington, in each case while in the

company or recent company of Fernandez.

Appellants first argue that the trial court erred in refusing to submit the testimony of a co-defendant, Joseph Delay, to the jury.[5] This has reference to the fact that after appellants and the other defendants except Delay had rested, and their cases had been submitted to the jury, Delay, who was being tried to the court without a jury, took the witness stand and testified in his own defense.

When counsel for appellants learned of this, at a time when the jury was still out, they moved for a mistrial on the ground that evidence was received at the trial in the absence of the jury and without notice to appellants. An additional ground advanced in support of this motion was that the Government, although knowing Delay to be innocent, had deliberately indicted him so that he could not be called as a witness on behalf of appellants. The motion was denied.

Alternatively, counsel for appellants moved that appellants' cases be reopened to hear Delay's testimony. Pointing out that they could not have called Delay as a witness, appellants argued that now that Delay had voluntarily testified, his testimony should be available to them.

---

travel from Washington to Oregon pursuant to a scheme to defraud him of five thousand dollars or more in connection with the sale of timber near Deer Island, Oregon.

3. Under this count, in which Fernandez, Dalgliesh, Pratt, Dual and Delay were charged, it was alleged that from about February 1, 1958 to the date of the return of the indictment on August 27, 1962, the persons charged conspired with each other and with other persons, including John R. Sizer, to commit offenses against the United States and to defraud the United States in the manner therein described. Four offenses were described, all relating to the stealing, converting, or taking by fraud, of property, securities or money of the value of five thousand dollars or more. These offenses were: interstate and foreign transportation of property, securities or money in violation of 18 U.S.C. § 2314; interstate travel in violation of the same statute; transmis-

sion of wire communications in interstate or foreign commerce in violation of 18 U.S.C. § 1343 (1958); and use of the mails in violation of 18 U.S.C. § 1341 (1958).

The means and methods by which this conspiracy was to be accomplished are then described in this count. While there are general allegations referring to frauds upon unidentified persons, the only identified victims and described transactions are those dealt with in the substantive counts. This is likewise true of the nine overt acts set out in this count.

4. In sentencing Fernandez, the trial court commented that he was the "mastermind of the whole situation."

5. As indicated in notes 2 and 3, Delay was charged with Fernandez on count 4 of indictment No. 16845, and with all three appellants, and others, in count 2 of indictment No. 16870.

Upon inquiry by the court it became evident that some of appellants' counsel would have been content to have Delay's testimony read to the jury, while others thought Delay should testify in person before the jury and be subject to cross examination. Another complication arose from the fact that the cases against appellants had been submitted to the jury the previous day and that the foreman of the jury had reported late that evening that the jury had come to a decision on some of the counts. Counsel for appellants indicated that, in view of this circumstance, it would be necessary to examine the jury on voir dire to determine if they would be able to set aside their tentative determinations in connection with the consideration of Delay's testimony. This alternative motion was denied.

After the convictions were obtained appellants moved for a new trial, urging as one ground, the reception of Delay's testimony in the absence of the jury. This motion was also denied.

The arguments advanced by appellants with regard to Delay's testimony bring into question the correctness of the court's rulings in denying all of these motions.

Delay was tried jointly with appellants and the other defendants up to the time that appellants and the other defendants rested. His counsel joined the other counsel in voicing objections, participated actively in the cross examination, engaged in voir dire examination, and offered exhibits. Nevertheless, and notwithstanding the fact that the motions of Delay and appellants for complete severance, made before the trial and renewed at the end of the evidence, had been denied, there was a severance in the limited sense that Delay's case was to be submitted to a different fact-finder, the judge instead of the jury.[6]

This distinction was preserved throughout the trial. At the outset it was made clear to all counsel that Delay was being tried to the court. The jury was also so instructed. Opening statements were made at the beginning of the trial on behalf of each appellant, but Delay was permitted to reserve his opening statement. Appellants rested without putting on any case knowing that Delay, who had not up to then put on any case, was not resting.

There were other circumstances indicating that counsel for appellants were aware that Delay would go forward with a defense after appellants' cases had been submitted to the jury. During the course of the trial counsel for appellant Pratt objected to the reception of evidence concerning an interview which a Government agent had had with Delay, on the ground that "this should be reserved for a later time since it isn't relevant to any inquiry that the jury will have." During a colloquy between court and counsel as to the time counsel for appellants would require for closing argument, and at other times, the court made it clear that following the submission of appellants' cases to the jury, Delay would present his defense.

The record does not indicate that appellants or their counsel were aware that Delay would personally testify in his own defense. But they were sufficiently on notice so that they should have inquired of Delay as to his plans in this regard, if his testimony was deemed valuable to them. Despite the close cooperation between counsel for appellants and for Delay throughout the trial, apparently no such inquiry was made. Under these circumstances, appellants are hardly in a position to claim surprise.

Appellants do not, on this appeal, renew the charge that the Government, knowing Delay to be innocent, deliberately indicted him so that he could not be called as a witness on behalf of appellants. Nor is there anything in the record to substantiate such a serious accusa-

---

6. After his motions for a completely separate trial were denied, Delay filed a waiver of trial by jury. At the same time his counsel requested that Delay's case be heard at the same time as those of the other defendants.

tion. While Delay was acquitted by the judge, he was vigorously prosecuted by the United States Attorney.

Appellants have never charged, nor would the record support such a charge, that the United States deliberately arranged to postpone Delay's testimony until after appellants had rested, so that the jury would not hear it. As before noted, when appellants rested they knew that Delay had not, and that he planned to go forward with his defense. There is no reason to believe that, had they chosen to do so, appellants could not have withheld resting their cases until Delay had completed his. The decision as to when Delay would put on his defense was made not by the Government, but by Delay, and was acquiesced in by appellants.

■ Therefore, finding no impropriety in the way in which Delay's testimony was received, we hold that the trial court did not err in denying the motion for a mistrial.

■■ The motion to reopen for the purpose of receiving Delay's testimony, made after the jury had appellants' cases already under submission, rested within the sound discretion of the trial court. See Wolcher v. United States, 9 Cir., 218 F.2d 505, 509. Considering appellants' lack of diligence in previously ascertaining whether Delay would testify, the fact that the jury had already reached tentative decisions on some of the counts, and the improbability that Delay's testimony would have been helpful to appellants (to be discussed below), we do not believe that the trial court abused its discretion in denying that motion.

■ Appellants at no time moved for a new trial on the ground of newly-discovered evidence and, in fact, expressly stated in arguing their post-trial motion for a new trial, that the motion was not based on the theory of newly-discovered evidence. We will nevertheless assume that one of appellants' motions could be so regarded, and will consider whether appellants were entitled to a new trial on this ground.

Delay testified concerning his limited participation, as attorney for Fernandez, in the Belcher transaction dealt with in counts 2 and 3 of indictment No. 16845, the Casteel transaction dealt with in count 7 of that indictment, and the Royal Bank of Canada transaction, dealt with in count 4 of that indictment. All of these matters were also involved in the conspiracy charge set out in count 2 of indictment No. 16870. While Delay's testimony tended to show that his participation in these transactions was innocuous, it did not tend to show that the transactions themselves did not occur, or were innocent in character, or that any of the appellants were not criminally involved therein.[7] Delay testified that he did not know about the general circumstances surrounding any of these transactions,[8] and also stated that Fernandez had several other attorneys.[9]

■ In order to justify a new trial on the ground of newly-discovered evidence the new evidence must be such that

---

7. As heretofore noted, appellant Dalgliesh was not charged under any of the substantive counts concerning which Delay testified, but was charged under the conspiracy count. Appellant Pratt was charged under one substantive count which Delay dealt with in his testimony (count 7 of indictment No. 16845) and the conspiracy count.

8. As to this, Delay testified in part:
"Q. Now, Mr. Delay, did you know of the circumstances at any time surrounding the issuance of that check? A. No sir, not until subsequent to this indictment when I investigated the matter with you and Mr. Bantz, my attorneys. Q. Did you know any of the circumstances surrounding the Belcher matter as far as what transpired as far as phone calls and the US National Bank and the Gresham Bank participation in that until the time of trial? A. No sir. Q. Now, did you know anything about the matter between Fernandez and Casteel until the time of trial? A. No sir. Q. Now, at any time did Mr. Fernandez tell you in any way or in any manner whatsoever what the goings on were between he [sic] and any of these parties? A. No sir, he did not. Q. Relative to that did

on a new trial it would probably produce an acquittal. See Fiorito v. United States, 9 Cir., 265 F.2d 658, 659. In our opinion, the testimony given by Delay was not such that, if heard by the jury, it would have been likely to lead to the acquittal of any of the appellants on any of the charges against them.

■ There was also, as previously pointed out, a lack of diligence by appellants, and this alone was enough to warrant denial of such a motion. See Gallegos v. United States, 9 Cir., 295 F.2d 879. A motion for a new trial on the ground of newly-discovered evidence is addressed to the sound discretion of the trial court. See Morgan v. United States, 9 Cir., 301 F.2d 272, 275. The trial court did not abuse that discretion in denying the motion if, indeed, any such motion was made.

Appellants next argue that the trial court erred in denying appellants' respective motions for severance made at the end of the evidence.

Appellants contend that it was then apparent that there was no single conspiracy possible binding all these counts and defendants together, but that there was, at most, only a series of separate conspiracies, each involving some defendants. Appellants assert that they were seriously prejudiced by the reception of evidence bearing upon matters which, to a large extent, did not concern one or the other of them.

While this argument is framed as an attack upon the failure to grant severance, the substance of the argument also includes a challenge to the sufficiency of the evidence to support the verdicts of guilty on the conspiracy count.

The evidence tending to support the convictions under the conspiracy count is summarized in detail in the Government's answering brief herein.[10] It appears therefrom that the only evidence connecting Dalgliesh with any of the substantive counts, or the conspiracy count, is that relating to the transactions referred to in count 5 of indictment No. 16845, of which charge he was acquitted, and that relating to the transaction referred to in count 6 of that indictment, of which charge he was convicted.

It also appears from the Government's summary that the only evidence connecting Pratt with any of the substantive counts, or the conspiracy count, is that relating to the transactions referred to in counts 5 and 7 of indictment No. 16845, and count 1 of indictment No. 16870. Pratt was charged and convicted on counts 7 and 1.[11]

As to the other substantive counts, the evidence not only fails to connect Dalgliesh and Pratt as direct participants, but fails to show that either of them

you ever have any knowledge of actually what transpired between Mr. Fernandez and any of these parties? A. No sir."

  *     *     *     *     *

"Q. Now, Mr. Delay, until you were able to obtain your files from the Trustee in Bankruptcy, and until we were able to investigate this, you had no knowledge of the circumstances surrounding any of these transactions that have been testified to in court here, is that right? A. That is correct. Yes."

9. Delay was cross examined at length concerning his participation in these transactions and nothing developed which was in the least exculpatory so far as appellants were concerned. But had Delay testified before the jury prior to the time appellants rested, his cross examination

would not have been limited to his own participation and could well have proved damaging to appellants. Nor it is unlikely that the jury would then draw an invidious comparison between Delay, who testified voluntarily, and appellants, who neither testified nor offered any other defense testimony.

10. The allegations of the conspiracy count are summarized in note 3.

11. In its brief the Government also calls attention to what it asserts is evidence connecting Pratt with counts 2 and 3 of indictment No. 16845. But this so-called evidence, to the effect that Pratt was to write a performance bond for the victim named in those two counts, consisted of statements by Fernandez in a deposition given in a civil suit which was not introduced in evidence in this criminal case.

knew of any of those transactions, or were aware of any conspiracy or conspiracies involving them, if any, or the nature and purpose of such conspiracy or conspiracies.

It therefore appears that Dalgliesh may have been involved in a conspiracy relating to the matters dealt with in count 6 of indictment No. 16845. Similarly, Pratt may have been involved in conspiracies, separate from that referred to above, relating to the matters dealt with in counts 5 and 7 of that indictment and count 1 of the indictment in No. 16870. But, assuming that there was substantial evidence showing the existence of a single, overall conspiracy of the kind alleged in the indictment, it was not shown that Dalgliesh or Pratt knew of its existence, nature or purpose and that, with such knowledge, they voluntarily and wilfully acted in concert with others in the furtherance of that conspiracy.[12]

█ Accordingly, the convictions on the conspiracy count cannot stand as to Dalgliesh and Pratt. See Leyvas v. United States, 9 Cir., 264 F.2d 272, 274.

As for Fernandez, there is evidence connecting him with all of the substantive counts. And to the extent that there was a conspiracy, or were conspiracies, between two or more persons in connection with these and similar transactions,[13] he, as the so-called "mastermind," was a direct participant therein, knew of any such conspiracy or conspiracies, and was aware of their nature and purpose.

But there is nevertheless wholly lacking any evidence showing that there was a single over-all conspiracy to engage in these separate and distinct transactions which occurred at different times and places and involved varying persons and methods of operation. At most, the evidence establishes several diverse conspiracies radiating from Fernandez, in all of which he participated, and in one or two of which Dalgliesh and Pratt participated. This being true, the conviction on the conspiracy count cannot stand even as to Fernandez and, on this additional ground, it cannot stand as to Dalgliesh and Pratt. See Leyvas v. United States, supra, 264 F.2d at 273.

For the reasons stated above, the convictions of all three appellants on the conspiracy count must be set aside, and judgments of acquittal entered thereon.

This brings us to the asserted error of the trial court in denying appellants' motions for severance, made at the end of the evidence.

In view of the conspiracy count wherein all of the defendants were alleged to have participated in the same series of acts or transactions constituting the offenses described in the substantive counts, the initial joinder of offenses and defendants in the two indictments was authorized under Rule 8(b), Federal Rules of Criminal Procedure. See Schaffer v. United States, 362 U.S. 511, 513, 80 S.Ct. 945, 4 L.Ed.2d 921.

Nevertheless, where such a joinder is proper under Rule 8(b), a defendant prejudiced thereby may, under Rule 14, Federal Rules of Criminal Procedure, move for an order requiring separate trial of counts, severing defendants, or providing whatever other relief justice requires. Appellants so moved, prior to trial, but being unable to satisfy the trial court at that stage of the proceedings that they would be prejudiced by the joinder of offenses and defendants, these motions were denied.

---

12. It is recognized that one may be convicted as a co-conspirator though he joined the conspiracy after its inception, his part was minor, he was not aware of all of the details of the conspiracy, he did not participate in an alleged overt act, and he did not know the part other conspirators were to play, or even who all of them were. Hernandez v. United States, 9 Cir., 300 F.2d 114; Chavez v. United States, 9 Cir., 275 F.2d 813.

13. In the detailed summary of evidence contained in the Government's answering brief, reference is made to several transactions other than, but generally similar to those described in the substantive counts, in which Fernandez was involved.

Appellants do not now appear to complain of this action. But they argue, in effect, that when they renewed their motions for severance after the evidence was in, it then being shown by the evidence that there was no single over-all conspiracy, the trial court should have granted the motions. It is thus asserted, in effect that the lack of substantial evidence supporting the conspiracy count retroactively establishes misjoinder as to them, or at least establishes prejudice entitling them to severance even if there was not a technical misjoinder.

■ Where the initial joinder is proper, subsequent severance is controlled by Rule 14, which provides for separate trials where " * * * it appears that a defendant * * * is prejudiced * * * by such joinder for trial * * *." Schaffer v. United States, supra, 362 U.S. at 515–516, 80 S.Ct. at 948, 4 L.Ed.2d 921. Absent prejudice, the failure of the Government to produce sufficient evidence to prove a conspiracy count which made possible the joinder, is not a ground for a mistrial and a severance. United States v. O'Brien, 7 Cir., 319 F.2d 437, 439; United States v. Kaufman, 2 Cir., 311 F.2d 695, 698.

■ The granting of severance because of possible prejudice, pursuant to Rule 14, rests within the sound discretion of the trial court. Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101. The specific question before us is whether in denying appellants' motions for severance made after the close of the evidence, the court abused its discretion.

■ Fernandez, of course, was involved in all seven of the substantive counts. While Dalgliesh and Pratt were each involved in only two of the substantive counts, the evidence as to each was not particularly complex and was suffi-

ciently compartmentalized so that the jury would have no unusual difficulty in keeping the evidence as to each separate in their own thinking. The best indication of this is that the jury did not indiscriminately convict all defendants on all counts on which they were charged, but acquitted on counts where the evidence was weak.[14] Most of the evidence was directly related to the substantive counts as distinguished from the conspiracy count. When evidence was received only as to certain defendants or offenses, the jury was so instructed. Each substantive count was precise and detailed as to time, place, persons involved and nature of the offense.[15]

In view of the circumstances referred to above, considered in the light of the whole record before us, we are of the opinion that the trial court did not abuse its discretion in denying the motions for severance made at the close of the evidence.

Appellants next argue that the trial court erred in admitting irrelevant and unduly prejudicial evidence.

In connection with the Belcher transaction dealt with in counts 2 and 3 of indictment No. 16845, there was testimony that a bank officer had received several telephone calls from a person who identified himself as Belcher. In connection with Stevenson Co-Ply Co. transaction, dealt with in count 6 of that indictment, there was testimony that a prospective purchaser of timber received a telephone call from a person who identified himself as Rotschy, a timber cruiser, whose cruise of certain timber the prospective purchaser was interested in obtaining.

The Government claimed that all of these telephone calls were actually made by Fernandez, who misrepresented himself as Belcher and Rotschy in an effort

14. Fernandez, the only defendant named in count 1 of indictment No. 16845, was found not guilty on that count. On count 5 of that indictment the jury found Fernandez and Dual guilty, and Dalgliesh not guilty.

15. At the beginning of the trial the court summarized the various counts. Counsel for the Government read them in their entireties to the jury. The jury had photocopies of the counts with them in the jury room at the time of their deliberations.

to deceive the persons being called. Among the items of evidence submitted by the Government bearing upon this matter was the testimony of the book-keeper formerly employed by Fernandez, received over timely and appropriate objections, that on other occasions having nothing to do with any of the transactions dealt with in these indictments, she had heard Fernandez misrepresent himself as someone else over the telephone. There was no testimony indicating that the conduct thus revealed was unlawful in any respect. The witness did not testify as to the purpose of these telephone calls but, as to one of them, the inference was left that Fernandez was attempting to obtain favorable newspaper publicity.

In connection with the Casteel transaction dealt with in count 7 of indictment No. 16845, there was testimony that Casteel had not signed a deed to certain timber land owned by him, although his signature appeared thereon. The Government claimed that either Casteel signed the document upon the representation that it was some other kind of paper, or that his signature had been fraudulently placed thereon without Casteel's knowledge, Fernandez being the guilty person, whichever way the fraud was accomplished.

Among the items of evidence submitted by the Government bearing upon this matter was further testimony from the same bookkeeper referred to above. She testified, over timely and appropriate objection, that Fernandez had a duplicating machine on which he had added a signature of a timber cruiser to an unsigned timber cruise by joining together two pieces of paper with scotch tape and running them through the machine. The witness did not know whether the person whose signature had been added had authorized this to be done.

As also bearing upon this matter, the Government produced testimony, received over timely and appropriate objections, concerning several other and unrelated transactions in which, according to the witnesses, unauthorized signatures and words were added to instruments after Fernandez obtained possession of them.

In objecting to the admission of this evidence, appellants invoked the general rule that when a defendant is on trial for a specific offense, evidence of a distinct offense unconnected with that charged in the indictment is not admissible. While appellants concede that there are well-recognized exceptions to that rule, they argue that none of those exceptions are applicable here.

Both the rule and its principal exceptions are stated in Stewart v. United States, 9 Cir., 311 F.2d 109, 112.[16] The rule, including its exceptions, is usually regarded as one of relevance, Lisenba v. People of State of California, 314 U.S. 219, 227, 62 S.Ct. 280, 86 L.Ed. 166, although in actuality it represents an accommodation between that rule,[17] and the rule precluding resort to evidence of a

---

16. In Stewart, 311 F.2d at page 112, the court quoted with approval, this statement of the exceptions to this rule, as set out in Bracey v. United States, 79 U.S.App. D.C. 23, 142 F.2d 85, 87:

"However, there are many well established exceptions to this rule, raised by the special circumstances of particular cases; to the end that all relevant facts and circumstances tending to establish any of the constituent elements of the crime of which the defendant is accused may be made to appear. Thus, evidence of other criminal acts has been held admissible by this court when they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or

explains the circumstances thereof; or tends logically to prove any element of the crime charged. Such evidence is admissible if it is so related to or connected with the crime charged as to establish a common scheme or purpose so associated that proof of one tends to prove the other, or if both are connected with a single purpose and in pursuance of a single object; as well as to establish identity, guilty knowledge, intent and motive."

17. As the Supreme Court said in Abel v. United States, 362 U.S. 217, 239, 80 S.Ct. 683, 697, 4 L.Ed.2d 668: "Good reason must be shown for prohibiting the Government from using relevant, otherwise admissible, evidence."

defendant's evil character to establish a probability of his guilt.[18]

■ Relevant evidence which tends to prove a material fact in the case on trial is admissible even though it incidentally shows that the accused committed another offense at a different time and place. O'Dell v. United States, 10 Cir., 251 F.2d 704, 707; 1 Wigmore on Evidence, 3 ed., § 216, pp. 712–718. But because evidence as to other offenses is subject to misuse by the jury, the relevance of such evidence to prove a material fact is to be restrictively determined. The exceptions to the rule against admitting evidence of other offenses thus represents court-determined instances in which relevance has been held sufficient to warrant admissibility.[19]

■ In our opinion, the testimony concerning the other telephone calls by Fernandez, in which he had impersonated others, demonstrated his familiarity with and willingness to use that *modus operandi* and therefore tended to identify him as the person who had impersonated others in telephone calls to the bank official and the prospective purchaser. Likewise, the testimony concerning his previous insertion of a signature in a document by use of a duplicating machine tended to show how the signature of Casteel could have been added to a deed, and that Fernandez was the one who did it. The testimony of others that documents they had delivered to Fernandez were later found to contain unauthorized signatures and words tended to show that Fernandez had developed a technique for doing this, thereby providing support for the claim that Casteel had been a victim of that technique.

The questioned testimony was therefore relevant and, in our view, its relevance outweighs the prejudice flowing from the fact that it shows misconduct not related to the transactions involved in this case.

At the close of the case the trial court gave a general instruction advising the jury that they were not to accept evidence of other similar acts as any evidence that any defendant committed any act charged in the indictment, but that if the jury found from other evidence than an accused had committed an act charged, then the evidence of other acts could be considered in determining "identity," "association," "guilty knowledge or state of mind," or "intent."

The evidence in question was not admissible to prove guilty knowledge, state of mind or intent, because it had no relevance in that direction, being wholly colorless with regard to the intent with which the charged acts were committed. But the instruction could not have been prejudicial in this respect because the jury was told that they could not consider the evidence at all unless the acts were independently proved. If the fact that Fernandez made telephone calls to the bank officer and prospective purchaser, impersonating others, was independently proved, an improper intent was likewise independently proved, because the nature of the act involved such an intent. This is likewise true with regard to the independent proof of the alteration of documents.

18. See Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168, for a good statement of this rule. As the court there points out, such evidence is rejected not because it is irrelevant, but because its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

19. As the court stated in Harper v. United States, 49 U.S.App.D.C. 324, 239 F.2d 945, 946:
   " \* \* \* the rule is that evidence of other offenses is admissible when substantially relevant to the offense charged; inadmissible when its relevance is insignificant; and, in borderline cases, admissible when its relevance outweighs the undue prejudice that may flow from it, but otherwise inadmissible. Stone, The Rule of Exclusion of Similar Fact Evidence: America, 51 Harv.L.Rev. 988 (1938); Lacy, Admissibility of Evidence of Crimes not Charged in the Indictment, 31 Ore.L.Rev. 267 (1952)."

While we have held that the evidence in question was admissible because of its tendency to prove that Fernandez committed the charged acts, the trial court instructed that it could not be considered for that purpose.[20] But appellants were not prejudiced by that instruction as it gave them the advantage of a ruling to which they were not entitled. Moreover, since we may assume that the jury abided by the instructions given, it is likely that the evidence of other offenses was not considered by the jury for any purpose—not to prove the acts because the court said it could not, and not to prove intent because this was independently proved.

We therefore conclude that the reception of the evidence in question did not constitute reversible error.

The trial court did not err in instructing the jury with regard to the substantive counts, concerning the meaning and application of the term "principal" as used in 18 U.S.C. § 2 (1958).[21]

We need not decide whether there was error with regard to the instructions concerning conspiracy, since we have held that the evidence is insufficient to support the convictions on that count.

Nor is it necessary to decide whether, as to count 1 of indictment No. 16870, involving a scheme to defraud Tarabochia, there was sufficient evidence to support the jury finding that property of the value of five thousand dollars was stolen, converted or taken, this being an essential element of the crime defined in the first paragraph of 18 U.S.C. § 2314. Fernandez and Pratt were convicted on that count, but their respective sentences thereon were made concurrent with sentences imposed upon them on other counts which we have upheld.[22]

The convictions of appellants on count 2 of indictment No. 16870 are reversed and, as to them, dismissal of this count of the indictment is directed. The convictions of the appellants on all of the substantive counts are affirmed.

---

20. The court did instruct that such evidence could be used to establish "identity" or "association," which would be relevant only in proving that the acts were committed. But this part of the instruction was in effect countermanded by the introductory instruction that the evidence could not be used in determining whether the defendants had committed the acts charged.

21. See Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919; Toles v. United States, 9 Cir., 308 F.2d 590; Aaronson v. United States, 4 Cir., 175 F.2d 41; Barsky v. United States, 83 U.S.App.D.C. 127, 167 F.2d 241, 252.

22. See Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 21 L.Ed.2d 321; Brothers v. United States, 9 Cir., 328 F. 2d 151.