980 F.2d 740
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mohammed M. RAHMAN, Mohammed Nural Islam, Mohammed Faroque,
Zamil Hassan, Defendants-Appellants.
 Nos. 91-10364, 91-10365, 91-10376 and 91-10416.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1992.
Decided Dec. 9, 1992.
 
 Before SNEED, ALARCON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Four defendants appeal their jury convictions for making false material declarations before a magistrate in violation of 18 U.S.C. § 1623. We affirm.
 
 I.
 FACTS AND PRIOR PROCEEDINGS
 
 3
 On December 10, 1988, border police detained Sakwat Ullah and Katherine Gosho-Kim on suspicion of illegally transporting six aliens, including the four appellants,[1] into the United States from Mexico. The appellants were also detained as material witnesses.
 
 
 4
 The appellants were deposed on January 5 and 11, 1989 before a magistrate. They all said they had come to the United States in 1985, which could mean that they were not in the U.S. illegally. This possibility existed because certain workers who were in the U.S. for 90 days during the period May 1985 to May 1986 qualified for amnesty under the Seasonal Agricultural Worker (SAW) amnesty program. After the depositions, the appellants were released, and the prosecutor nonetheless filed an indictment against Ullah and Gosho-Kim, charging them with transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(2)(A).
 
 
 5
 Approximately six months after the depositions, in June 1989, the Border Patrol moved offices and discovered each of the appellants' passports hidden behind a refrigerator in the room where Gosho-Kim had been left alone for a period of time on December 10, 1988. The passports, contrary to the depositions, indicated that all the appellants left their home country of Bangladesh in 1988.
 
 
 6
 Ten months later the trial of Sakwat Ullah and Katherine Gosho-Kim began. The appellants were not given Miranda warnings or otherwise informed of their Fifth Amendment right against self-incrimination. Each testified at the Ullah-Kim trial as he had at deposition, and the prosecution impeached each of them with their passports. On April 27, 1990, the appellants were arrested and charged with making false statements before a magistrate in violation of 18 U.S.C. § 1623. The indictment was filed on May 16, 1990, and the appellants' trial began on March 12, 1991.
 
 
 7
 The trial court granted the appellants' motion to suppress their Ullah-Kim trial testimony. The government noticed an interlocutory appeal of this decision, but asked for a voluntary dismissal of the appeal about three months later. Therefore, the appellants' Ullah-Kim trial testimony was never admitted in appellants' trial, and the government proceeded on the basis of their deposition statements and their passports.
 
 
 8
 During pre-trial motions at appellants' trial, the lawyers and judge discussed the form of an exhibit which was to contain both the false deposition statements and the oath taken before the magistrate. Without these statements the government's case would fail. Two of the defense attorneys stipulated to admission of the statements, one thought he had stipulated, and one thought he had offered to stipulate. However, the prosecutor mistakenly failed to move the statements into evidence.
 
 
 9
 Only Nural Islam's lawyer realized this mistake. Not surprisingly, he did not argue the lack of this crucial evidence on his first motion for a judgment of acquittal or during the prosecutor's closing argument. However, he did base his closing argument on the absence of this critical evidence. At this point, the prosecutor objected, and both the prosecutor and judge, assuming there had been a stipulation, so responded to Nural Islam's attorney.
 
 
 10
 The jury was sent to deliberate, and the judge checked the record and found the statements were not in evidence. The jury then asked for copies of the deposition questions and the appellants' false replies under oath. The judge reopened the record, prepared an exhibit with the oath and the false deposition statements from the indictment, and sent these to the jury in response to their question. The appellants and their counsel were present at this submission, and no one objected to the manner in which the evidence was given to the jury. The jury convicted the four appellants, and acquitted the fifth defendant.[2] The appellants moved again for a judgment of acquittal and new trial, which the court denied. They then filed timely notices of appeal.
 
 II.
 JURISDICTION
 
 11
 The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.
 
 III.
 DISCUSSION
 
 12
 A. Submitting evidence after the jury has convened.
 
 
 13
 The appellants first contend that the judge erred in submitting the evidence to the jury in the manner in which he did. The decision to reopen a case is reviewed for an abuse of discretion. United States v. Simtob, 901 F.2d 799, 804 (9th Cir.1990).
 
 
 14
 It was within the district court's discretion to submit appellants' false deposition statements, even after the jury had convened. Fernandez v. United States, 329 F.2d 899, 903 (9th Cir.), cert. denied, 379 U.S. 832 (1964); Eason v. United States, 281 F.2d 818, 822 (9th Cir.1960); Wolcher v. United States, 218 F.2d 505, 509 (9th Cir.1954), cert. denied, 350 U.S. 822 (1955). During jury deliberations, a court may admit evidence on an essential point that has been overlooked or is uncontroverted. Harrison v. United States, 387 F.2d 614, 616 (5th Cir.1968); Henry v. United States, 204 F.2d 817, 820 (6th Cir.1953); See also Blissett v. Lefevre, 924 F.2d 434, 439 (2nd Cir.), cert. denied, 112 S.Ct. 158 (1991);
 
 
 15
 In this case, the court, the prosecution, and three of the four defense attorneys thought they had stipulated to the false statements in the indictment. The evidence was essential to the prosecution's case, uncontroverted, and had been overlooked. The judge did not err.
 
 
 16
 Nural Islam argues that by sending the new exhibit into the jury without comment, the court gave the jury the impression that the false statements had been in evidence all along, and thus prejudiced Nural Islam by making it look like his attorney had tried to mislead the jury in his closing argument. However, no one, including Nural Islam's attorney, objected to the manner in which the judge introduced the evidence. No one asked for a curative instruction. In addition, Nural Islam's lawyer deliberately did not object to the lack of evidence during his first motion for acquittal or during the prosecutor's closing argument. Perhaps he erroneously believed the judge could not provide the exhibit after the case had gone to the jury, and he sought to take advantage of his misunderstanding of the law. We hold, however, that the district court did not abuse its discretion when it submitted the evidence to the jury in the way it did.
 
 
 17
 B. Speedy trial rights violation.
 
 
 18
 The appellants claim their speedy trial rights were violated under the Sixth Amendment,[3] under 18 U.S.C. § 3161 (the Speedy Trial Act), and under Fed.R.Crim.P. 48(b)[4] because the prosecution filed an interlocutory appeal, which the appellants contend violated the time prescriptions of the Speedy Trial Act.
 
 
 19
 The district court's factual findings concerning the Speedy Trial Act are reviewed for clear error, and questions concerning application of the law are reviewed de novo. United States v. Nash, 946 F.2d 679, 680 (9th Cir.1991). We review violations of the Sixth Amendment right to a speedy trial de novo. United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1050 (9th Cir.1990).
 
 
 20
 Under the Speedy Trial Act, a trial must commence within seventy days from the date the indictment is filed. However, certain periods of delay are excluded from the seventy day total. The indictment date was May 16, 1990; the lower court heard the motion for the Speedy Trial Act violation on November 19, 1990; the trial started on March 12, 1991. As of the November 19th motion date, there had accrued 120 days of excludable delay, not counting the 63 days attributable solely to the interlocutory appeal. Therefore, there was no Speedy Trial Act violation as of that date. (188 days total - 120 days = 68 days)
 
 
 21
 However, measured from the date of indictment to the beginning of trial, there had accrued 227 days of excludable delay, not counting the 63 day delay attributable solely to the interlocutory appeal, and a potential Speedy Trial Act violation existed. (300 days total - 227 = 73 days) However, the Speedy Trial Act specifically states that "any interlocutory appeal" is excludable, 18 U.S.C. § 3161(h)(1)(E), and the legislative history of the Act provides for an "automatic application of exclusions." United States v. Saintil, 705 F.2d 415, 417 (11th Cir.), cert. denied, 464 U.S. 855 (1983). Therefore, the Speedy Trial Act was not violated.
 
 
 22
 Moreover, appellants' right to a speedy trial under the Sixth Amendment was not violated because the 63 day delay attributable solely to the interlocutory appeal was not long enough to be "presumptively prejudicial," a threshold inquiry for a Sixth Amendment violation of the appellants' right to a speedy trial. United States v. Loud Hawk, 474 U.S. 302, 314 (1986); Sears Roebuck and Co., 877 F.2d at 739.
 
 
 23
 C. Failure to warn appellants at Ullah-Kim trial of right to remain silent.
 
 
 24
 The appellants claim they were putative defendants who were subpoenaed and compelled to testify at the Ullah trial, thus they contend they were entitled to a Miranda or equivalent warning that they could remain silent rather than testify. However, this same argument was squarely rejected in United States v. Kilgroe, 959 F.2d 802, 805 (9th Cir.1992). The appellants were not owed a warning before testifying at the Ullah-Kim trial.
 
 
 25
 D. Preindictment delay.
 
 
 26
 The trial court's denial of a motion to dismiss charges for preindictment delay is reviewed for an abuse of discretion. United States v. Sherlock, 962 F.2d 1349, 1354 (9th Cir.1989), cert. denied, 113 S.Ct. 419 (1992). In order to make out a Fifth Amendment violation for excessive preindictment delay, a claimant must first show that he has suffered "actual, non-speculative prejudice from the delay." Id. at 1353.
 
 
 27
 Appellants argue they were actually prejudiced by the delay because their testimony in the Ullah-Kim trial constituted, in effect, a "pre-trial discovery deposition ... which revealed defendants' defense and provided the government with an unfair strategic advantage" at their subsequent trial. The appellants do not articulate how their defense strategy was actually prejudiced by the government impeaching them at the Ullah-Kim trial, especially since their testimony was suppressed at their trial. There was no Fifth Amendment violation.
 
 
 28
 E. Materiality of Hassan's statements at Ullah-Kim deposition to Ullah-Kim trial.
 
 
 29
 Materiality of a false declaration under 18 U.S.C. § 1623 is reviewed de novo. United States v. Martinez, 855 F.2d 621, 623 (9th Cir.1988). The denial of a motion for acquittal is reviewed like a challenge to the sufficiency of the evidence. United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989). Consequently, we review the evidence in the light most favorable to the government to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 1134 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)). The denial of a motion for a new trial is reviewed for an abuse of discretion. United States v. George, 960 F.2d 97, 101 (9th Cir.1992).
 
 
 30
 At the Ullah-Kim deposition, Hassan stated he left Bangladesh permanently in 1980, and entered the United States at the end of January 1985. Hassan contends these statements were not material to a question at issue in that trial, and thus cannot form the basis for a conviction under 18 U.S.C. § 1623(a), which requires a "false material statement" "to the point in question" before a grand jury or court. For the purpose of 18 U.S.C. § 1623, a false statement is material if it is relevant to a question at issue and if it has a "tendency to influence" the jury's decision. United States v. Clark, 918 F.2d 843, 846 (9th Cir.1990).
 
 
 31
 Hassan's deposition was material to a question at issue in the Ullah-Kim trial. If Hassan had worked in the United States for 90 days during the period of May 1985 to May 1986, he would have qualified for the SAW amnesty program, and thus might have been in the United States legally when he was picked up. His deposition statement about entering the United States at the end of January 1985 would tend to influence the jury about whether Kim and Ullah were guilty of transporting six illegal aliens. Therefore, his deposition statements were material.
 
 
 32
 F. Severance issue.
 
 
 33
 A district court's decision about whether to sever pursuant to Fed.R.Crim.P. 14 is reviewed for an abuse of discretion. United States v. Castro, 887 F.2d 988, 996 (9th Cir.1989). The party seeking to reverse the denial of a motion to sever must prove that the joint trial caused "clear," "manifest," or "undue" prejudice. Id.
 
 
 34
 Hassan argues the four appellants were all from Bangladesh; they all had foreign, yet similar names, and their deposition statements, upon which the charges were based, all came in response to the same questions from the same Assistant U.S. Attorney. He contends these similarities "effectively created an impermissible situation whereby the government had only to hint at the guilt of a single defendant in order to gain the conviction of all...." While initially this argument is appealing, the government did not get a conviction of all the defendants. One, Mohammed Ashiqur Rahman, was acquitted. This suggests the jury was reasonably able to compartmentalize the evidence as it relates to the individual defendants, and there was no prejudice from joinder. United States v. Cuozzo, 962 F.2d 945, 950 (9th Cir.1992), cert. denied, 1992 WL 266277, 1992 LEXIS 7136 (U.S.1992); United States v. Kats, 871 F.2d 105, 108-09 (9th Cir.1989); United States v. Unruh, 855 F.2d 1363, 1374 (9th Cir.1987), cert. denied, 488 U.S. 974 (1988). The district court did not abuse its discretion in denying Hassan's motion to sever.
 
 
 35
 G. Co-conspirator statement exception to hearsay rule
 
 
 36
 Hassan argues that there was no charge of conspiracy and no independent evidence, aside from the statements themselves, of a conspiracy, and that therefore the district court erred in admitting the pre-arrest statements of Gosho-Kim and Ullah, the documents from Ullah's car, the appellants' passports, and the blank birth certificates under the co-conspirator exception.
 
 
 37
 The standard of review for the admission of co-conspirator statements is not settled in the Ninth Circuit. We will review the district court's decision to admit evidence of a co-conspirator's statement for abuse of discretion. United States v. Garza, No. 91-30240, 1992 WL 145074, at * 5, 1992 U.S.App. LEXIS 14635, at * 15 (9th Cir. June 29, 1992); United States v. Peralta, 941 F.2d 1003, 1006 (9th Cir.1991), cert. denied, 112 S.Ct. 1484 (1992). We review the trial court's finding that there was a conspiracy and that the statements were made during and in furtherance of the conspiracy for clear error. Bourjaily v. United States, 483 U.S. 171, 181 (1987); Peralta, 941 F.2d at 1006 (quoting United States v. Torres, 908 F.2d 1417, 1424 (9th Cir.), cert. denied, 111 S.Ct. 272, and cert. denied, 111 S.Ct. 366 (1990)).
 
 
 38
 There need not be a charge of conspiracy in order to admit the evidence. United States v. Layton, 855 F.2d 1388, 1400 (9th Cir.1988), cert. denied, 489 U.S. 1046 (1989). There was a conspiracy involving Gosho-Kim, Ullah, and the four appellants to illegally transport the appellants into the United States. There was independent evidence of this conspiracy in addition to the statements. It consisted of the following: Ullah's and Gosho-Kim's cars were first in line, waiting at the border in tandem; both Ullah and Gosho-Kim had bird books in their cars; later, Gosho-Kim and Ullah were found together in the vicinity of a national park with the appellants; the appellants' tracks showed they had walked across the international border; Gosho-Kim was left alone in the room in the border patrol trailer where the passports were subsequently found. The blank birth certificates and documents found in Ullah's car were further evidence of a conspiracy to illegally smuggle the appellants into the U.S. In addition, the pre-arrest statements were made during the course of and in furtherance of the conspiracy. The district court did not abuse its discretion in admitting this evidence.
 
 
 39
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 All six were indicted, but one did not appear for trial and one was acquitted, so only four appeal
 
 
 [2]
 The evidence against the fifth defendant, Mohammed Ashiqur Rahman, differed in kind from the evidence against the four appellants. In his deposition, Ashiqur stated that he left Bangladesh in 1985, but he was never asked nor did he say when he entered the United States
 
 
 [3]
 The Speedy Trial Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...."
 
 
 [4]
 Fed.R.Crim.P. 48(b) provides that "if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment. A Rule 48(b) dismissal is proper only after a "fore-warning of the consequences" of further delay. United States v. Gilbert, 813 F.2d 1523, 1531 (9th Cir.), cert. denied, 484 U.S. 860 (1987) (quoting United States v. Simmons, 536 F.2d 827, 834 (9th Cir.), cert. denied, 429 U.S. 854 (1976)). Since the government was not warned of the possibility of a dismissal, there can be no Rule 48(b) dismissal in this case