UNITED STATES of America, Plaintiff-Appellee,

v.

Anthony Carlo COZZETTI, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Michael MILLER, also known as Michael Rosenthal, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Ronald Ernest GILMOUR, Defendant-Appellant.

Nos. 25880, 25881, 25882.

United States Court of Appeals, Ninth Circuit.

April 6, 1971.

Rehearing Denied in No. 25880 May 4, 1971.

---

Thomas R. Hogan (argued), San Francisco, Cal., for Cozzetti.

Robert D. Mulford, San Francisco, Cal., for Michael Miller.

George Foley, of Foley, Garner & Shoemaker, Las Vegas, Nev., for Gilmour.

Ray Little (argued), Asst. U. S. Atty., Bart M. Schouweiller, U. S. Atty., Julien G. Sourwine, Asst. U. S. Atty., Reno, Nev., for appellee.

Before CARTER and HUFSTEDLER, Circuit Judges, and BYRNE,* District Judge.

JAMES M. CARTER, Circuit Judge.

Cozzetti and Miller were convicted of conspiring to travel in interstate commerce and to use the facilities of interstate commerce for the purpose of carrying on a business enterprise involving prostitution in violation of 18 U.S.C. §§ 2 and 1952.[1] Cozzetti was also con-

---

* Honorable WILLIAM M. BYRNE, Sr., United States District Judge, Central District of California, sitting by designation.

[1] 18 U.S.C. § 2. "Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

18 U.S.C. § 1952 "Interstate and foreign travel or transportation in aid of racketeering enterprises

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

"(1) distribute the proceeds of any unlawful activity; or

"(2) commit any crime of violence to further any unlawful activity; or

"(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity,

victed of transporting Charlene Travis in interstate commerce for the purpose of prostitution in violation of 18 U.S.C. § 2421. Gilmour was convicted on various counts. He filed notice of appeal but filed no briefs. The appeal in No. 25,-882, is dismissed.

The following issues are raised on the appeal by Cozzetti or Miller or both: (1) sufficiency of the evidence to support the convictions, (2) constitutionality of 18 U.S.C. § 1952, (3) alleged error in refusal to grant a severance, (4) alleged violation of a sequestration order, (5) alleged error in revoking bail of one appellant during the trial, (6) constitutionality of a search incident to arrest and (7) alleged prejudicial comments by a defense counsel. We affirm as to Cozzetti and Miller.

1. *Sufficiency of the Evidence.*

Appellants contend that the evidence produced at their trial was insufficient to convict them of conspiring to travel in interstate commerce and to use the facilities of interstate commerce for the purpose of carrying on a business enterprise involving prostitution.

They argue that there was insufficient evidence of an agreement between them. Viewing the evidence in a light most favorable to the Government, as we must, we find ample evidence from which an agreement between Cozzetti and Miller could be inferred.

Cozzetti renewed an earlier acquaintance with Charlene Travis at a Christmas party in December, 1967. Travis testified that, after the party and before January 7, 1968, she agreed to work for Cozzetti as a prostitute and moved into his apartment in Las Vegas, Nevada.

Travis testified that one morning Cozzetti placed a telephone call to a person in Los Angeles, California named Mike but did not speak to him. When Mike called back, Travis answered the phone and gave it to Cozzetti. Cozzetti told Travis that there was an opening for a girl in Los Angeles that needed filling immediately.

Cozzetti drove Charlene Travis from Las Vegas to the Los Angeles area on January 7, 1968, arriving around 3:00 a. m. at the Highlander Hotel in Hollywood. Around 10:00 a. m. Mike Miller (known then as Mike Rogers) arrived at the motel and took Cozzetti and Travis to Apartment 205 at the Orion Apartments on Arch Drive in Studio City, which he had rented under the name of Mike Rogers in late November of 1967. He remained as a tenant until March of 1968. Cozzetti told Travis that the apartment was the place she was to work as a prostitute.

Travis testified that she moved into the Orion Apartment and worked there as a prostitute for three weeks. The method of operation was for Miller to come to the apartment in the morning when telephone calls were placed to men, using a trick book with names and telephone numbers provided and kept by Miller. In the afternoon, the men called to set up appointments to see Travis. Miller came by in the evening to pick up his share of Travis' earnings, which was one-half of what she made, out of which Miller paid for the apartment. Travis gave the remaining portion of her earnings to Cozzetti with the understanding, made before the trip to California, that one-half of such remaining portion was hers. Cozzetti came to the apartment

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution of-

fenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion or bribery in violation of the laws of the State in which committed or of the United States.

"(c) Investigations of violations under this section involving liquor or narcotics shall be conducted under the supervision of the Secretary of the Treasury."

twice to pick up money and discussed daily the amount of earnings with Travis on the telephone.

After about three weeks at the Orion Apartment, Travis decided that she wanted to break ties with Cozzetti and moved to another apartment to work as a prostitute for Miller. Travis eventually left her employment with Miller, lived with two other men in the Los Angeles area, and negotiated with Cozzetti for her return to Las Vegas.

■ Appellants argue that, even if there was evidence of a conspiracy to use interstate facilities with the intent of violating state prostitution laws, there was no evidence of such a conspiracy with the intent to carry on a business enterprise in violation of state prostitution laws, required for a violation of 18 U.S.C. § 1952. The words "business enterprise," as used in § 1952, refer to a continuous course of conduct rather than sporadic, casual involvement in a proscribed activity. United States v. Zizzo (7 Cir. 1964) 338 F.2d 577, 580, cert. denied 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435 (1965). Appellants argue that the evidence of agreement to bring Charlene Travis to Los Angeles to work as a prostitute, which she did for a few weeks in one place and a short time in another, shows only sporadic, casual involvement in proscribed activity. We disagree.

■ The trick lists and the arrangement for division of the proceeds indicate that the operation was intended to be profitable. The defection of Travis from the operation after a short period of time, even if it were an indication that the operation is in retrospect characterizable as sporadic and casual, does not indicate that the conspirators did not *intend* to engage in a continuous course of conduct. 18 U.S.C. § 1952 penalizes the use of interstate facilities "with the intent" to carry on the unlawful "business enterprise." The fact that the operation was shortly terminated or was small time does not take it out of § 1952. Spinelli v. United States (8 Cir. 1967)

382 F.2d 871, 890, rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

### 2. *Constitutionality of 18 U.S.C. § 1952.*

■ Appellants contend that 18 U.S.C. § 1952 is unconstitutional because the words "business enterprise" are unconstitutionally vague. This court has held that § 1952 meets the standard of certainty required by the Constitution, although we did not specifically discuss the words "business enterprise." Turf Center, Inc. v. United States (9 Cir. 1963) 325 F.2d 793, 795. Accord, Spinelli v. United States, *supra*, 382 F.2d at 887–888. Those words do not introduce unconstitutional vagueness into the statute. United States v. Smith (E.D.Ill. 1962) 209 F.Supp. 907, 918, and cases cited therein. See generally, United States v. Roselli (9 Cir. 1970) 432 F.2d 879, cert. denied 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828, 2/22/71, as to the intent of Congress in enacting the section.

### 3. *Denial of Severance.*

Appellants contend that the trial court's failure to grant their motions for severance of their trial from the trial of the codefendant, Ronald Gilmour, was reversible error under Rule 14, F.R. Crim.P.

The trial below involved five counts of the eight count indictment returned against appellants and Gilmour; a count, under which Cozzetti and Miller were eventually convicted, charging the three with conspiracy to use interstate facilities to carry on a business enterprise involving prostitution; a substantive count, under which Cozzetti was eventually convicted, charging him with transporting Charlene Travis on January 7, 1969 from Las Vegas to Los Angeles for the purposes of prostitution; and three substantive counts, under which Gilmour was eventually convicted, charging him with transporting Joan Steinberg on three different dates between Las Vegas and California for the purposes of prostitution. The four substantive violations were alleged to be overt acts pursuant to

the conspiracy. At the end of the prosecution's case, each of the three codefendants moved for judgments of acquittal on the conspiracy count, which were denied as to Cozzetti and Miller and granted as to Gilmour. The trial court denied the subsequent motions of Cozzetti and Miller for severance of their trials from Gilmour's.

There is no question that the initial joinder of the defendants was proper under Rule 8(b), F.R.Crim.P., and that failure of proof of the conspiracy that made possible the joinder is not a ground for severance under Rule 14, F.R.Crim. P., absent prejudice. Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L. Ed.2d 921 (1960); Fernandez v. United States (9 Cir. 1964) 329 F.2d 899, 906, cert. denied, 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964). Appellants argue that they were prejudiced by trial with Gilmour by complicated circumstantial evidence, much of which involved illegal and immoral conduct with which they had no established connection, that even with limiting instructions left the jury hopelessly confused.

■■ The decision under Rule 14 to grant or deny severance because of prejudice in the trials of defendants who are properly jointly indicted is within the sound discretion of the trial court. Opper v. United States, 348 U.S. 84, 85, 75 S.Ct. 158, 99 L.Ed. 101 (1954). The resolution of the question on appeal, whether the discretion was abused, depends on the facts of each case. Daut v. United States (9 Cir. 1968) 405 F.2d 312, 314. The trial court must weigh, on a case by case basis, the advantage to the administration of justice of joint trial against the prejudice to the defendants. The trial court need not have exercised its discretion to order separate trials, unless a joint trial was manifestly prejudicial. Parker v. United States (9 Cir. 1968) 404 F.2d 1193, 1194, cert. denied, 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782 (1969); United States v. De La Cruz Bellinger (9 Cir. 1970) 422 F.2d 723, 726, cert. denied, 398 U.S. 942, 90 S.Ct. 1860, 26 L.Ed.2d 278 (1970).

■ We cannot say on the facts of this case that there was an abuse of discretion. Counsel and the trial judge repeatedly made the jury aware of limitations in the admissibility of the evidence. The charge to the jury reminded it of those limitations and the effect of the acquittal of Gilmour on the conspiracy count. We find no abuse of discretion.

### 4. Violations of Sequestration Order.

Appellants argue that reversible error resulted from conversations between witnesses that were allegedly in violation of an order of the trial court.

At the beginning of the trial, the trial court ordered the prospective witnesses excluded from the courtroom until called to testify and ordered them not to discuss their testimony with each other while absent from the courtroom. Under cross-examination, Government witness Travis testified that in the witness room during the trial she told another Government witness, F.B.I. Agent Murray, of her use of drugs. Under cross-examination, Government witness Joan Steinberg testified that during the trial she went over statements that she had previously given to the F.B.I. after Agent Murray asked her if she wished to read them. The trial court concluded that the conversations were not violations of its order and were not grounds for a mistrial.

Appellants contend that the conversations breached the trial court's admonition and deprived them not only of their right to a fair trial but also of their right to confrontation of witnesses when the trial court allegedly prevented effective cross-examination of Travis on her conversation with Agent Murray.

■ "The initial decision to exclude witnesses from the courtroom during trial is within the court's discretionary power and is reviewable only upon a showing of abuse. Moreover, notwithstanding a violation of the court's sequestration order, it is within the trial court's discretionary power to fashion an appropriate remedy." Buick v. United States (9 Cir. 1968) 396 F.2d 912, 914,

cert. denied, 393 U.S. 1068, 89 S.Ct. 724, 21 L.Ed.2d 711 (1969) (citations omitted). The purpose of the rule of exclusion is to prevent the shaping of testimony by witnesses to match that given by other witnesses, Taylor v. United States (9 Cir. 1967) 388 F.2d 786, 788.

■ The conversations did not touch on the anticipated testimony of the witnesses and did not prejudice appellants, who attempted to impeach Travis with the disclosure of her drug addiction and the fear of the F.B.I. it subjected her to. Further, this court has upheld the permitting of witnesses to testify who have been exposed to the testimony of other witnesses in violation of a court order, Spindler v. United States (9 Cir. 1964) 336 F.2d 678, 682, cert. denied sub nom. Richard v. United States, 380 U.S. 909, 85 S.Ct. 894, 13 L.Ed.2d 797 (1965); Weedlin v. United States (9 Cir. 1967) 380 F.2d 657, 660, and has indicated that "unless the violation has somehow so discredited the witness as to render his testimony incredible as a matter of law he should not be disqualified from testifying." Taylor v. United States, *supra*, 388 F.2d at 788.

Finally, the record indicates that trial counsel's opportunity to cross-examine Travis on her conversation was not unduly limited. After disclosure of the conversation, she was cross-examined on the conversation and her drug addiction. Only on the next day of trial did the trial court prevent further exploration of the subject. There was no abuse of discretion in denying the motion for a mistrial.

### 5. *Revocation of Bail During Trial.*

■ Cozzetti contends that the revocation of his bail by the trial court during his trial deprived him of his right to bail under Rule 46(a) (1), F.R.Crim.P. and constituted reversible error. The trial was scheduled to commence on February 16, 1970, but was continued to February 18. While Cozzetti was at liberty on bail on February 17, the incident occurred which led to the revocation of his bail pending the trial. The court held a hearing out of the presence of the jury on February 18, 1970, at which Cozzetti and one Daniel Moran, a Government witness testified. At the end of the hearing the trial court revoked Cozzetti's bail and remanded him to custody for the remainder of the trial on the express ground that Cozzetti had attempted to tamper with witnesses when he accompanied his process server to serve a subpoena on Daniel Moran, a Government witness who was the former husband of Government witness Charlene Travis. Daniel Moran testified that Cozzetti said to him " * * * I should advise Miss Travis not to testify * * * he mentioned that she could, * * * she could say she had been intimidated by the authorities * * * that she was afraid of the authorities, and that is the reason that she was testifying, and to not testify because of that." The trial court resolved conflicts in the testimony against Cozzetti. We have reviewed the record viewing the evidence in the light most favorable to the Government, as we must, and there was ample evidence to support the trial judge's conclusion, and to justify the revocation of bail as to Cozzetti and his commitment during the trial.

The trial court clearly had the power to revoke a defendant's bail for tampering with witnesses. The Supreme Court has stated:

"A trial judge indisputably has broad powers to ensure the orderly and expeditious progress of a trial. For this purpose, he has the power to revoke bail and to remit the defendant to custody. But this power must be exercised with circumspection. It may be invoked only when and to the extent justified by danger which the defendant's conduct presents or by danger of significant interference with the progress or order of the trial. See * * * Carbo v. United States, 288 F.2d 282 (C.A. 9th Cir. 1961) * * *." Bitter v. United States, 389 U.S. 15, 16–17, 88 S.Ct. 6, 7, 19 L.Ed.2d 15.

In the *Carbo* decision cited by the Supreme Court and in a later appeal of that case, Carbo v. United States (9 Cir.

1961) 288 F.2d 686, 690, this court held that interference with Government witnesses by a defendant is a sufficient basis for the exercise of the trial court's power to revoke bail during trial.

Nor was there sufficient showing that the revocation of bail legally prejudiced Cozzetti or denied him a fair trial. However, if he suffered actual prejudice, he brought it on himself by his own illegal conduct.

Cozzetti does not indicate how he was handicapped in aiding his trial counsel. Cozzetti was free on bail from February 10, 1969 until February 18, 1970, during which period he was able to assist counsel. Barnard v. United States (9 Cir. 1965) 342 F.2d 309, 314, cert. denied 382 U.S. 948, 86 S.Ct. 403, 15 L.Ed.2d 356 (1965). Cozzetti was able to call several witnesses on his behalf. United States v. Jackson (9 Cir. 1970) 430 F.2d 1113, 1115. Cozzetti also had not indicated that his opportunity to confer with his counsel during trial was limited. We note that the trial judge was careful to give Cozzetti's counsel an opportunity to consult with his client before cross-examination of the chief Government witness against him, Charlene Travis. United States v. Allison (9 Cir. 1969) 414 F.2d 407, 414, cert. denied, 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed.2d 433 (1969).

Finally Cozzetti was ordered released on bail on February 27, 1970, following the verdicts of guilty on February 26, 1970. After sentence on April 10, 1970, Cozzetti was again released on bail pending his appeal. There is thus no problem here of confinement after the justification for revocation of bail had passed.

### 6. *Constitutionality of Search.*

Cozzetti contends that the search of his residence by the F.B.I. at the time of his arrest violated his Fourth Amendment rights.

An arrest warrant was issued for Cozzetti on February 4, 1969. He was arrested pursuant to the warrant on February 6 at his Las Vegas residence, which the F.B.I. then searched without a search warrant. Part of the residence was not searched, and only a limited search was made of the living room and a closet. The bulk of the search was of a room adjoining the living room that Cozzetti had been using as an office where a manila envelope marked 1968 charges and receipts containing business records, a file box containing cancelled checks, a 1968 diary and address book, a box containing index cards with names and addresses, and a taped stack of index cards with names and addresses—all introduced into evidence—were seized along with eight boxes of recording tapes not introduced into evidence. The office contained other records that were not seized.

Although the Government concedes that the search violated the standards of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) for searches incident to arrests, this court has decided that *Chimel* is applicable only to searches conducted after the date of decision in the case, June 23, 1969, and is thus inapplicable to this search conducted on February 6, 1969. Williams v. United States (9 Cir. 1969) 418 F.2d 159, 162, cert. granted, 397 U.S. 986, 90 S.Ct. 1120, 25 L.Ed.2d 394 (1970); United States v. De La Cruz Bellinger (9 Cir. 1970) 422 F.2d 723, 726, cert. denied, 398 U.S. 942, 90 S.Ct. 1860 (1970).

Cozzetti argues that, even if *Chimel* is not retroactive, the search of his residence violated pre-*Chimel* standards for searches; that there was no search warrant although there was ample time to obtain one; that Cozzetti was arrested at the door of his residence, not inside; and that the search was an exploratory fishing expedition for evidence rather than specifically directed to the means and instrumentalities by which the crimes charged had been committed.

Cozzetti relies on Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), which was overruled for the purposes of pre-*Chimel* law by United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950) "[t]o the extent that [Trupiano] requires a search warrant solely upon the

basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest * *."

■ Cozzetti seems to argue that the arrest was a pretext for the search. We cannot so conclude as a matter of law. One of the F.B.I. agents who searched the residence, Agent Murray, testified that the warrant was returned late at night on February 4, that it probably was not received by the F.B.I. until February 5, and that perhaps not until February 6 could he get around to exercising it. The evidence seized related to the nature and purpose of the arrest, and there is nothing in the record to indicate that an earlier opportunity to arrest Cozzetti on the warrant was passed up by the F.B.I. Williams v. United States, *supra*, 418 F.2d at 161.

■ Cozzetti characterizes the arrest as made outside his residence because it was made at the front door and argues it was, therefore, unlawful under Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969) and Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). *Shipley* (arrest 15 or 20 feet from house subsequently searched) and *Vale* (arrest on sidewalk near the front steps of house subsequently searched) are clearly distinguishable.

■ Finally, we believe that the search was reasonable under the totality of the circumstances. The search of the residence over which Cozzetti had control was not of an area more extensive than the search permitted in Harris v. United States, 331 U.S. 145, 152, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). Williams v. United States, *supra*, 418 F.2d at 162. Further, the search focused on the area of the residence in which the objects of the search were the most likely to be found. The search was not a fishing expedition as in, e. g., Von Cleef v. New Jersey, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728 (1969) where there was a search of an entire three story, 16-room house and seizure of several thousand items. The search was for the purpose of finding evidence of the crime for which Cozzetti was arrested. United States v. De La Cruz Bellinger, *supra*, 422 F.2d at 725. Further, although Agent Murray agreed that the F.B.I. went to the premises "with the intention to search the premises and seize any relevant evidence," he also testified that they "searched for these records [the ones introduced into evidence] primarily." Even if the items sought and seized could not all be characterized as means and instrumentalities of the crime charged, it is now permissible to search for evidence. Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); United States v. Parker (9 Cir. 1970) 428 F.2d 488, 490.

### 7. *Comment by Defense Counsel.*

Miller contends that his conviction should be reversed because counsel of codefendant Gilmour stated in his closing argument that Miller had been in jail. There was no evidence Miller had been in jail, in fact he had not been, and Miller argues that the statement deprived him of his Sixth Amendment right to confrontation. He relies on cases from other circuits, principally United States v. Guajardo-Melendez (7 Cir. 1968) 401 F.2d 35, that have reversed convictions because of misstatements of *prosecutors*. Miller concedes he can find no cases requiring reversal for similar remarks by counsel for codefendants.

■ No objection to the misstatement was made by Miller. He asks us to apply the plain error rule, under Rule 52 (b), F.R.Crim.P. We have noted that Rule 52(b) should be invoked only in exceptional situations, "situations wherein it appears to be necessary in order to prevent miscarriage of justice or to preserve the integrity and reputation of the judicial process." Marshall v. United States (9 Cir. 1969) 409 F.2d 925, 927. "Comments to the jury may cause reversal, under the plain error rule, though not objected to, but the general principle remains that counsel cannot remain silent, interpose no objections, and after

verdict raise for the first time the point that comments were improper and prejudicial." Ignacio v. People of Territory of Guam (9 Cir. 1969) 413 F.2d 513, 520–521, cert. denied, 397 U.S. 943, 90 S.Ct. 959, 25 L.Ed.2d 124 (1970).

The statement consisted of a few words in a lengthy closing argument and was completely lacking in evidential support. Gilmour's trial counsel told the jury before his argument and the trial judge instructed the jury that they were the sole judges of the facts. Tenorio v. United States (9 Cir. 1968) 390 F.2d 96, 98, cert. denied, 393 U.S. 874, 89 S.Ct. 169, 21 L.Ed.2d 145 (1968). The evidence of Miller's guilt was strong. Chaussee v. United States (9 Cir. 1969) 423 F.2d 712. The failure of Miller's vigilant trial counsel to object to the comment indicates to us that he did not notice it, in which case it is doubtful that the jury did. On the other hand, trial counsel may have been aware of the statement and consciously failed to object. We cannot find plain error.

The judgments are affirmed.