596 F.2d 824
 UNITED STATES of America, Plaintiff-Appellee,
v.
Manuel VALENZUELA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alonso LIZARRAGA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bernardina LIZARRAGA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mary Elizabeth CORLEY, Defendant-Appellant.
 Nos. 78-1684, 78-1016, 78-1342 and 78-1784.
 United States Court of Appeals,
Ninth Circuit.
 March 23, 1979.
Certiorari Denied May 21, 1979.
See 99 S.Ct. 2415
 
 Terry Amdur, Danilo J. Becerra, of Moreno, McFadden & Becerra, Los Angeles, Cal., Robert B. Gaunt, Torrance, Cal., for defendants-appellants.
 David R. Hinden, Robert J. Perry, Los Angeles, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE and HUG, Circuit Judges, and EAST,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 Appellants appeal from convictions of various counts arising from their activities in what the jury found to be an organized heroin ring. The appeal of Jose Valenzuela, found by the jury to have been one of the central figures in this operation, is treated in a separate opinion. All of these appellants were charged and convicted of Count I, conspiracy to possess with intent to distribute heroin, 21 U.S.C. §§ 841(a)(1), 846. Each appellant was also convicted of a substantive count of possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1): Manuel Valenzuela in Count III, and Corley and Alonso and Bernardina Lizarraga in Count VIII. As to Manuel, Corley, and Alonso, we affirm; as to Bernardina, we reverse.
 
 I. Manuel Valenzuela
 
 2
 Manuel's sole argument is that, because the evidence pertaining to him related only to 1971 through 1973, the government's delay in prosecuting him substantially prejudiced him because it forced him to stand trial with his brother, Jose Valenzuela. The government conceded in the district court that it had delayed prosecution until evidence against the entire organization could be amassed.
 
 
 3
 Assuming, without deciding, that Manuel was actually somewhat prejudiced by the delay,[1] his argument for dismissal cannot stand, as the very cases he cites make clear. In United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), in which a preindictment investigative delay of 18 months was found not unreasonable, the Court stated that prejudice is "generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." Id. at 790, 97 S.Ct. at 2049. In the Court's view, "compelling a prosecutor to file public charges as soon as the requisite proof has been developed against one participant on one charge would cause numerous problems in those cases in which a criminal transaction involves more than one person or more than one illegal act." Id. at 792-93, 97 S.Ct. at 2050. Such problems, including the impairment of investigations and the burdening of courts with multiple trials involving the same facts, led the Court to conclude that "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Id. at 796, 97 S.Ct. at 2052. See also United States v. Mays, 549 F.2d 670, 678 (9th Cir. 1977) (despite actual prejudice, dismissal requires intentional misconduct or negligence by the government). Similarly, no deprivation of due process occurred in Manuel's case.
 
 II. Mary Elizabeth Corley
 
 4
 Corley was one of several persons found mixing heroin when police officers searched the Lizarragas' house and garage pursuant to a search warrant. Issuance of the warrant was based in part upon an informant-heroin user's tip, which led to identification of Alonso as the supplier for the informant's dealer, one "Blondie." Corley argues that disclosure of the informant's identity was necessary to permit her to attack adequately the sufficiency of the warrant and to aid generally in her substantive defense. She relies upon Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), arguing that since the informant was "involved" as a purchaser of heroin from Blondie, and because he observed drug transactions between Blondie and Alonso, he was a percipient, necessary witness.
 
 
 5
 This argument must be rejected. Roviaro involved an informant who was the "sole participant, other than the accused, in the transaction charged." Id. at 64, 77 S.Ct. at 630 (emphasis added). Here the incidents about which the informant gave information were not charged, but were relevant only to the establishment of probable cause for the search. In McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), the Court upheld a state court's refusal, when the lawfulness of an arrest was in question, to compel disclosure of the identity of an informant whose information had been relied upon to establish probable cause. Here, as in McCray, the information given by the informant and the basis for believing the information reliable were specifically articulated. There is no reason to overturn the trial judge's implicit finding that the officers reasonably believed the informant to be reliable. The suggestion that disclosure of the informant's identity would have been helpful generally to the defense is mere speculation. See United States v. Marshall, 532 F.2d 1279, 1282 (9th Cir. 1976).
 
 
 6
 Corley argues additionally that disclosure of the informant's identity was necessary to permit her to raise an entrapment defense. She apparently argues that because the informant-heroin user purchased heroin from Blondie, who in turn purchased from Alonso, the next higher level supplier, this " created the intent in the mind of the supplier (Blondie) to possess heroin for sale, overcame the resistance of the supplier and directly caused the chain of events that eventually led to the participation of (Corley) in the offense of possession of heroin." Even crediting Corley's farfetched chain of logic, the ultimate contention is without merit. Entrapment occurs when officers induce the commission of a crime, not when they merely afford opportunities for its commission. United States v. Russell, 411 U.S. 423, 435, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrells v. United States, 287 U.S. 435, 441, 53 S.Ct. 210, 77 L.Ed. 413 (1932).
 
 III. Alonso Lizarraga
 
 7
 Alonso attacks on several grounds the sufficiency of the affidavit supporting the warrant for the search of his house. This affidavit discloses substantively that an informant-heroin user had seen his own dealer, Blondie, take delivery of heroin from a person whose name may have been Alonso, whose description fit that of Alonso, and who drove a car registered to Alonso. It also discloses that the affiant-officer had, upon the informant's tip as to time and place, observed what appeared to be a drug transaction between Blondie and the person believed to have been Alonso.
 
 
 8
 Alonso first argues that the informant's identity should have been disclosed, an argument which we have already rejected. It is next argued that the affidavit does not disclose sufficiently the reliability of the informant. Alonso points particularly to the fact that the affidavit, in referring to three of the four previous cases in which this informant was involved, states only that the informant "assisted" the officer. In the fourth case, the informant "furnished . . . information," but this case culminated only in arrest, not conviction.
 
 
 9
 We reject Alonso's argument as to the informant's reliability. Viewing the affidavit in the appropriate "commonsense and realistic fashion," United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), it is clear from the context that the officer was using "assisted" to refer to the supplying of information. The officer refers to the informant as having " given truthful information," and having "assist(ed) . . . by acting in an undercover role." The affidavit also discloses that in the fourth case not only did the information supplied by the informant lead to arrest, but also to seizure of heroin.
 
 
 10
 Further, it is clear that tips given by the informant were corroborated by personal observations of the officer. The officer knew Blondie to be a heroin dealer, and had arrested him in the past. The officer verified the license plate and identification of the car and the description of its owner, as supplied by the informant. The officer also observed an apparent drug transaction between Blondie and the driver of the car when and where the informant had said that such a transaction would occur. The reliability of the informant is also buttressed somewhat by his statements against his own penal interest that he had purchased heroin from Blondie. See United States v. Harris, 403 U.S. 573, 583-84, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (opinion of Burger, C. J., joined by three justices, one justice concurring in the judgment).
 
 
 11
 Alonso also argues that the affidavit does not disclose that the information came from the informant's personal knowledge. This contention is also without merit, as the affidavit is clear that it relates the informant's personal observations. It states either that the informant has "seen" the actions related to the officer, or provides information of such nature and detail as to make clear that it relates firsthand observation.
 
 
 12
 It is next argued that even if the affidavit is sufficient to establish Alonso as the "connection," it does not disclose reasonable grounds for believing that heroin would be found at Alonso's house. The premise of this argument is correct: the facts supporting the warrant must show probable cause to believe that the criminal objects are presently in the place to be searched, Durham v. United States, 403 F.2d 190, 193 (9th Cir. 1968), and "it cannot follow in all cases, simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence." United States v. Lucarz, 430 F.2d 1051, 1055 (9th Cir. 1970).
 
 
 13
 But it is also clear that interpreting a search warrant in the proper "commonsense and realistic fashion," United States v. Ventresca, supra, 380 U.S. at 108, 85 S.Ct. 741, may result in the inference of probable cause to believe that criminal objects are located in a particular place to which they have not been tied by direct evidence. See, e. g., United States v. Spearman, 532 F.2d 132, 133 (9th Cir. 1976) (per curiam) (affidavit disclosed heroin sales at defendant's apartment; held, warrant for search of car valid); United States v. Lucarz, supra, 430 F.2d at 1055 (affidavit gave probable cause to believe postal employee had stolen contents of mail pouch; Held, warrant for search of residence valid). In the present case the affidavit discloses that the informant had seen deliveries by Alonso several times, and that Blondie was able to get heroin from Alonso readily. The officer's personal knowledge confirmed that Blondie was a dealer, permitting the reasonable inference that Alonso was an even higher level dealer. The officer, acting on the informant's tip, saw Alonso leave his house and drive to where the apparent narcotics transaction with Blondie took place. The opinion of the affiant, an experienced narcotics officer, that there would be heroin on Alonso's person or in his house or car, is but a particularized restatement of the officer's opinion in the affidavit in United States v. Spearman, supra, 532 F.2d at 133, that " '(i)t is commonplace for dealers of heroin to have heroin that is packaged for sale in the place where they live or sell from, in their vehicles or on their persons.' " We find the affidavit in the present case sufficient to permit the inference that heroin would be found at the time of search in the Lizarraga residence.
 
 
 14
 Alonso next argues that his motions for severance were improperly denied. Under Federal Rule of Criminal Procedure 8(b), joinder of several defendants is permissible only where "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Here the requisite relatedness of the series of acts alleged in the substantive counts hinges upon the conspiracy count, which ties all of the substantive offenses together. Alonso argues, in essence, that the conspiracy count is insufficient or improper, and thus that misjoinder is shown. Further, it is argued that even if joinder was proper under Rule 8(b), failure to grant severance under Rule 14 was an abuse of discretion.
 
 
 15
 Ordinarily, the mere charging of a conspiracy count linking together substantive counts against various defendants fully satisfies the Rule 8(b) requirement of relatedness and makes joinder proper under that rule. Schaffer v. United States, 362 U.S. 511, 514, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); United States v. Donaway, 447 F.2d 940, 943 (9th Cir. 1971); Fernandez v. United States, 329 F.2d 899, 905 (9th Cir.), Cert. denied, 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964). Even if the appellate court decides subsequently that the conspiracy count was improper, and reverses the conspiracy conviction, reversal of the substantive convictions does not result under Rule 8(b). Fernandez v. United States, supra, 329 F.2d at 905-06; See Schaffer v. United States, supra, 362 U.S. at 514, 80 S.Ct. 945. This rule may not apply where conspiracy is alleged in bad faith merely to sidestep the requirements of Rule 8(b), United States v. Donaway, supra, 447 F.2d at 943, but Alonso's argument charging bad faith is not persuasive.
 
 
 16
 The question then becomes whether the trial court abused its discretion under Rule 14, which permits severance when justice so requires. A failure to establish conspiracy is not a ground for severance under Rule 14, absent prejudice. Schaffer v. United States, supra, 362 U.S. at 516, 80 S.Ct. 945; United States v. Cozzetti, 441 F.2d 344, 349 (9th Cir. 1971); Fernandez v. United States, supra, 329 F.2d at 906. "The trial court need not have exercised its discretion to order separate trials, unless a joint trial was manifestly prejudicial." United States v. Cozzetti, supra, 441 F.2d at 349. We find that the burden of showing manifest prejudice has not been met.
 
 
 17
 Alonso was convicted of both conspiracy and substantive Count VIII. He apparently does not challenge the sufficiency of the substantive count, and in any event the evidence on this count is strong. Thus, because Alonso was sentenced concurrently on the conspiracy and substantive counts, we affirm the conviction without review of the sufficiency of the conspiracy count. See United States v. Westover, 511 F.2d 1154, 1155 (9th Cir.), Cert. denied, 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 673 (1975).
 
 IV. Bernardina Lizarraga
 
 18
 Bernardina first attacks the sufficiency of the search warrant, raising many of the same arguments raised by Alonso. These arguments are discussed fully above. Additionally, Bernardina objects to the execution of the warrant, arguing that the state officers involved failed to comply with the applicable "knock-notice" rules.
 
 
 19
 Before reaching Bernardina's substantive "knock-notice" argument, we are presented with the question whether state or federal standards or both apply to this issue. Initially we conclude, contrary to the assertion of the government, that the federal knock-notice statute, 18 U.S.C. § 3109, is not applicable of its own force, because it is addressed to entries involving federal officers, See Sabbath v. United States, 391 U.S. 585, 588, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); United States v. Bradley, 455 F.2d 1181, 1185 & n.8 (1st Cir. 1972), Aff'd on other grounds, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973), and the warrant here was executed by state officers only. The federal question before us is, therefore, whether the officers' conduct was "reasonable" within the meaning of the Fourth Amendment. As we have recognized in light of Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963),[2] "(i)t is now clear that, to some extent, (the knock-notice requirements of 18 U.S.C. § 3109) have been incorporated into the Fourth Amendment." United States v. Bustamante-Gamez, 488 F.2d 4, 9 (9th Cir. 1973), Cert. denied, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974). We need not reach the question whether meeting the federal standard alone is sufficient, because we conclude that the warrant was properly executed whether tested under the state or federal statutes,[3] or under general "reasonableness" standards.
 
 
 20
 Bernardina objects to the entry at the front door of the residence, arguing that the officers were not refused entry as required by the state or federal statutes. Apparently the officers knocked on the partially open door, and when Bernardina looked out through the glass in the door, they displayed a badge and two or three times demanded entry to permit execution of the warrant. Bernardina pushed on the door to close it and retreated. After calling to her, the officers knocked hard on the door and entered. Bernardina argues that she merely intended to delay opening the door until she could collect her children, dry her hands of dishwater, and find someone who spoke English to deal with the officers.
 
 
 21
 While we do not discredit Bernardina's explanation of her conduct, in the present inquiry we must look not to her explanation but rather to what the officers might reasonably have believed from the circumstances as apparent To them. See McClure v. United States, 332 F.2d 19, 22 (9th Cir. 1964), Cert. denied, 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1965); People v. Schad, 21 Cal.App.3d 201, 207-08, 98 Cal.Rptr. 439, 442-43 (1971). Further, we have observed that refusal of admittance "will rarely be affirmative, but will oftentimes be present only by implication. . . . There are no set rules as to the time an officer must wait before using force to enter a house; the answer will depend on the circumstances of each case." McClure v. United States, supra, 332 F.2d at 22 (footnote omitted). We find here that the officers could reasonably have believed from Bernardina's conduct that permission to enter had implicitly been denied. Thus, this entry complied with either the state or federal statute, and was not unreasonable under the Fourth Amendment.
 
 
 22
 Bernardina next questions the sufficiency of the evidence to convict her of both conspiracy and substantive Count VIII. By the government's own argument, only two items of evidence support her conviction of the substantive count of possession of heroin. First, she apparently lived with her husband on the premises where the heroin was found. We have explained that
 
 
 23
 (p)roof of exclusive control or dominion over property on which contraband narcotics are found is a strong circumstance tending to prove knowledge of the presence of such narcotics and (the) control thereof (requisite to a finding of possession). . . . On the other hand, mere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug or the property on which it is found, is insufficient to support a finding of possession.
 
 
 24
 Arellanes v. United States, 302 F.2d 603, 606 (9th Cir.), Cert. denied, 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962) (footnotes omitted). In the present case, particularly in light of the evidence directly linking Alonso to at least some of the heroin (E. g., his name on the bag of heroin hidden in the garage), Bernardina's mere joint occupancy of the house is at best equivocal, and is not alone sufficient to support her conviction of possession. See id. at 606 (government's argument for conviction, that " 'Where the narcotics were, there also was Geneva Arellanes,' " rejected "because the presence of the narcotics is also exactly coincidental with the presence of her husband, and Mrs. Arellanes' presence with both is as fully explained by her attachment to her husband as it might be by a control over the drugs."). See also Delgado v. United States, 327 F.2d 641 (9th Cir. 1964) (where marijuana was discovered in shared bedroom, convictions were reversed for failure to establish possession by each or either occupant).
 
 
 25
 The second item of evidence relied upon by the government is the fact that Bernardina attempted to push the door shut when the officers came to execute the warrant. This, it is argued, shows guilty knowledge. Again, however, this evidence is highly equivocal, because after pushing the door Bernardina apparently retreated to where her young children were. This evidence adds nothing to Bernardina's mere joint occupancy of the house, and thus we find the evidence on Count VIII insufficient.
 
 
 26
 As to the conspiracy count, little if any evidence relating to Bernardina seems to go beyond tying her to the substantive offense. This too is insufficient.
 
 
 27
 THE CONVICTIONS OF MANUEL VALENZUELA, MARY ELIZABETH CORLEY, AND ALONSO LIZARRAGA ARE AFFIRMED; THE CONVICTIONS OF BERNARDINA LIZARRAGA ARE REVERSED.
 
 
 
 *
 Honorable William G. East, United States District Judge, District of Oregon, sitting by designation
 
 
 [1]
 The government correctly points out that the nature of the prejudice claimed here that Manuel was forced to stand trial with his brother makes Manuel's argument essentially a claim of improper or prejudicial joinder. During trial, Manuel verbally joined in the motion by the Lizarragas for severance, but apparently does not question on appeal the denial of that motion. Assuming, however, that this point is raised implicitly, we affirm the denial of the motion for severance as to Manuel for the same reasons discussed in part III as to Alonso. No showing of manifest prejudice has been made. We do not decide whether this type of prejudice is that contemplated by United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), and United States v. Mays, 549 F.2d 670, 677, 679-80 (9th Cir. 1977)
 
 
 [2]
 In Ker, after noting that the entry in question had been held by a state court to comply with state law, the Supreme Court went on to test the entry by constitutional "reasonableness" standards. The Court split on the question whether the entry satisfied those standards. Compare 374 U.S. at 37-41, 83 S.Ct. 1623 (opinion of Clark, J., joined by three justices, one justice concurring in the result) (entry proper) With id. at 46-64, 83 S.Ct. 1623 (opinion of Brennan, J., joined by the Chief Justice and two justices) (entry improper)
 
 
 [3]
 Cal. Penal Code § 1531 (West 1970) provides:
 The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance.