UNITED STATES of America, Plaintiff-Appellee,

v.

Lino CATABRAN, Defendant-Appellant.

No. 86–1134.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1987.

Decided Jan. 6, 1988.

Lawrence F. Janof, Sacramento, Cal., for defendant-appellant.

John P. Panneton, Sacramento, Cal., for plaintiff-appellee.

Before BROWNING, Chief Judge, PREGERSON and REINHARDT, Circuit Judges.

## OPINION

PREGERSON, Circuit Judge:

The district court found defendant Lino Catabran guilty of concealing assets during a bankruptcy proceeding and destroying or concealing records of a bankrupt corporation in violation of 18 U.S.C. § 152. Catabran was sentenced to serve eighteen months on one count (destruction of records) and was placed on probation for five years on the other count. He contends that the district court erred in admitting general ledger computer printouts against him, in allowing testimony regarding re-moval of carpeting from the store, and in denying defendant's motions for severance and mistrial. Catabran also contends that he was denied effective assistance of counsel. We hold that the district court ruled properly on these motions and that Catabran was not denied effective assistance of counsel. We therefore affirm.

## BACKGROUND

Defendant Catabran served as president of Bedder Nights, Inc., a corporation owning three waterbed stores in the Sacramento area. Co-defendant Jack Emmets served as vice-president. Each owned fifty percent of the corporation's stock. They opened the first store (the "Bradshaw" store) in 1980, the second (the "Sunrise" store) in early 1982, and, the third (the "El Camino" store) shortly thereafter.

Defendants encountered financial difficulties and in June 1982, sought the advice of a bankruptcy attorney. On June 24, 1982, they petitioned for relief under Chapter 11. Both defendants received instructions regarding their obligations as debtors in possession, including their duty to safeguard assets and make monthly reports.

In August 1982, defendants closed the Sunrise store and transferred inventory, office equipment, and supplies to the other two stores. Defendants also ordered the removal of carpeting, speakers, track lighting, and other fixtures from the Sunrise store.

At this point, defendants divided their responsibilities: Catabran took charge of the El Camino store and told one of his employees that he and Emmets had discussed splitting up the company. Catabran would receive half the Bedder Nights merchandise and open another store under a different name at the El Camino location, using the leasehold improvements from the Sunrise store. In December 1982, Catabran reserved the name "Waterbed Liquidators" and asked his sister to serve as nominal president.

During November 1982, the bankruptcy court issued an Order to Show Cause to determine if the proceedings should be con-

verted to a bankruptcy under Chapter 7. The government argued that $180,000 worth of merchandise was at the Bradshaw and El Camino stores one week prior to this time. Shortly after the bankruptcy court issued the Show Cause Order, Catabran supervised the removal of a substantial quantity of items, including merchandise and office equipment, from the Bradshaw showroom and warehouse. Catabran had the items brought either to the Waterbed Liquidators' warehouse and showroom or to a storage location rented under another name. Catabran did not inform Emmets of these activities. Catabran ultimately sold this merchandise through Waterbed Liquidators.

At approximately the same time, Catabran held a going-out-of-business sale at the El Camino store. He instructed the sales staff to accept only checks with the payee designation left blank. Credit purchases, when insisted upon, were run through an imprinter which had the Bedder Nights nameplate removed. The name "Waterbed Liquidators" was later placed on the blank charge slips.

After the sale, Catabran closed the El Camino store, remodeled it using Sunrise fixtures, and reopened it as Waterbed Liquidators. He instructed the employees to remove all tags identifying Bedder Nights and to destroy all Bedder Nights records and forms. Waterbed Liquidators then sold Bedder Nights merchandise.

On December 1, 1982, the bankruptcy court ordered conversion of Bedder Nights' Chapter 11 reorganization to a Chapter 7 liquidation. The court appointed a trustee on December 6, 1972, but the trustee found no records or merchandise and assets totaling only $8,495. Search warrants executed in February 1983 at the Waterbed Liquidators warehouse and a storage facility turned up items traceable to Bedder Nights and some Bedder Nights records.

Catabran and Emmets were charged with conspiracy and two counts of concealing assets during bankruptcy—violations of 18 U.S.C. § 152. At trial, the district court overruled Catabran's objections to the introduction of general ledger computer printouts and a chart compiled from the printouts, ruling that the former were properly admissible as business records under Fed.R.Evid. 803(6), the latter as a summary under Fed.R.Evid. 1006. The court also allowed testimony regarding the carpeting removed from the Sunrise store, denying Catabran's in limine motion and overruling similar objections made at trial.

At the close of the government's case, the district court granted defendant Emmets' motion for severance, finding that the overwhelming evidence against Catabran could unfairly prejudice Emmets even with limiting instructions. The court denied Catabran's motion for mistrial and severance. At the same time, the court dismissed the conspiracy count.

After an eleven-day jury trial, Catabran was convicted of two counts of violating 18 U.S.C. § 152—concealing assets in a bankruptcy.

## DISCUSSION

### I. Admission of the Computer Printouts

#### A. Standard of Review

Appellant contends that the district court erred in admitting general ledger computer printouts and a summary chart compiled from them. We review evidentiary questions for an abuse of discretion. *United States v. Smith*, 609 F.2d 1294, 1302 (9th Cir.1979); *United States v. Licavoli*, 604 F.2d 613, 623 (9th Cir.1979); *cert. denied*, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980).

#### B. The Computer Printouts

##### 1. Admissibility as Summaries Under Fed.R.Evid. 1006

Catabran contends that the computer printouts constituted a summary and were inadmissible under Fed.R.Evid. 1006 because the government failed to produce the underlying documents. His argument is without merit. The computer printouts were the company's general ledgers. They contained inventory, payroll, and other accounting data put into the computer by

Bedder Nights' bookkeepers on a monthly basis.

This court has consistently treated general ledgers as business records, not as summaries. *See, e.g., Mende v. United States*, 282 F.2d 881, 884 (9th Cir.1960) (general ledger properly admitted as business record in mail fraud case), *cert. denied*, 364 U.S. 933, 81 S.Ct. 379, 5 L.Ed.2d 365 (1961); *Standard Oil Co. v. Moore*, 251 F.2d 188, 223 (9th Cir.1957), *cert. denied*, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958) (entries from plaintiff's general ledger based on cash register receipts admissible as business record in antitrust suit).

The use of a computer to create the ledger does not change the result. In *United States v. De Georgia*, 420 F.2d 889, 893 n. 11 (9th Cir.1969), the court noted that "it is immaterial that the business record is maintained in a computer rather than in company books" assuming that the proponent lays a proper foundation. *See also United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir.1985) (upholding admission of computerized phone billing records under the business records exception in a trial for conspiracy to fix prices).[1] Moreover, Fed.R.Evid. 803(6), the business records exception, specifically allows for the admission of a "data compilation, in any form," which meets the requirements of the rule. Consequently, we analyze the district court's admission of the printouts as business records, not as summaries.

### 2. Admissibility as Business Records Under Fed.R.Evid. 803(6)

■ The district court properly found the computer printouts admissible as business records under Fed.R.Evid. 803(6). *See Miller*, 771 F.2d at 1237; *De Georgia*, 420 F.2d at 893 n. 11; *Russo*, 480 F.2d at 1240–41; *Fendley*, 522 F.2d at 187. The proponent of the business records must satisfy the foundational requirements of the business records exception. Rule

803(6) allows for the admission of business records when they are: (1) made or based on information transmitted by a person with knowledge at or near the time of the transaction; (2) made in the ordinary course of business; and (3) trustworthy, with neither the source of information nor method or circumstances of preparation indicating a lack of trustworthiness. *See Miller*, 771 F.2d at 1237.

Qualified witnesses laid the foundation required by Rule 803(6). One of the bookkeepers, Miss Keys, testified that she put into the computer sales, inventory, payroll, and tax information on a current basis; that the printout accurately set forth that information; and that Bedder Nights produced these printouts as a regular practice each month. Ms. Keys also testified that she manually checked the information put into the computer for accuracy. Other witnesses provided similar testimony.

■ Catabran makes two related arguments for excluding the printouts under Rule 803(6). First, he contends that the printouts were not made in the ordinary course of business because he did not rely on them for inventory purposes. Witnesses testified that the printouts were used primarily for financial reporting and to secure loans. However, there was also testimony that, although the business did not necessarily rely on the printouts for inventory, the printouts did provide accurate inventory figures. Moreover, Fed.R.Evid. 803(6) does not require that the business rely on the document in such a specific way. The rule merely requires that the record be "kept in the course of regularly conducted business activity." *See Miller*, 771 F.2d at 1237; *Smith*, 609 F.2d at 1301. Witnesses testified that the general ledger computer data was kept on a monthly basis as a routine business practice. Therefore, the printouts satisfy the requirement of

---

1. Other circuits have also treated computer records as business records rather than as summaries. *See United States v. Russo*, 480 F.2d 1228, 1239–40 (6th Cir.1973) (annual Blue Shield statistical run admissible in mail fraud case as business record; held not to be a sum-mary), *cert. denied*, 414 U.S. 1157, 94 S.Ct. 915, 39 L.Ed.2d 109 (1974); *United States v. Fendley*, 522 F.2d 181, 187 (5th Cir.1975) (computer printout admissible in criminal prosecution if it meets business record requirements).

Fed.R.Evid. 803(6) that they be made in the ordinary course of business.

■ Second, appellant contends that the district court erred in admitting the printouts because they were inaccurate and therefore untrustworthy. The district court recognized that the defense had brought out inaccuracies in the computer printouts but held that these inaccuracies went to the weight of the evidence, not to admissibility. This is the general rule. *See United States v. Hudson,* 479 F.2d 251, 254 (9th Cir.1972) (fullness and completeness of selective service file in draft prosecution goes to weight, not admissibility of evidence), *cert. denied,* 414 U.S. 1012, 94 S.Ct. 377, 38 L.Ed.2d 250 (1973). The question here is whether the special characteristics of computerized records should alter this rule.

Catabran suggests two sources of inaccuracies characteristic of computerized records. First, Catabran suggests that inaccuracy could have resulted from errors in data entry.[2] However, each witness claimed to have input the data correctly. Miss Keys, in particular, stressed that she double-checked her figures. Second, Catabran challenges the accuracy of the computer program itself. He argues that the computer program created inaccurate inventory figures because of the markup it applied. Miss Keys testified that the computer calculated a certain markup automatically, but that she could, and did, override that function for inventory sold at less than the suggested price. Although there was some contradiction concerning this issue, we conclude that the district court did not abuse its discretion in admitting the ledgers, particularly given the extensive cross-examination on this issue. *Cf. Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505, 515 n. 9 (9th Cir.1985) (summary not inadmissible under Rule 1006, even though "self-calculated" and "unverified," because inaccuracies could be brought out on cross-examination). Any question as to the accuracy of the print-outs, whether resulting from incorrect data entry or the operation of the computer program, as with inaccuracies in any other type of business records, would have affected only the weight of the printouts, not their admissibility. *Manual for Complex Litigation Second* § 21,446 n. 81 (1985).

### C. The Chart

■ The defendant also challenges the admission of a chart summarizing inventory information from the general ledger material. The chart is admissible as a summary under Rule 1006 if the underlying documents are admissible and available to the opponent for inspection. *See Paddack v. Dave Christensen, Inc.,* 745 F.2d 1254, 1259 (9th Cir.1984); *United States v. Johnson,* 594 F.2d 1253, 1255–57 (9th Cir.), *cert. denied,* 449 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 376 (1979); The district court properly admitted the general ledger computer printouts upon which the chart was based, and these documents were available to the defendant for inspection. Consequently, we hold that the district court properly admitted the chart as a summary.

### II. Testimony Regarding the Carpet Removal

Several witnesses testified that they removed carpeting from the Sunrise store at defendant's direction for use in the El Camino, Waterbed Liquidators store. The prosecution initially sought to show that the carpeting was an asset of the bankrupt corporation, but the bankruptcy trustee later testified that it was not the company's property. The carpeting originally belonged to the Sunrise store's landlord, and after Catabran removed the carpeting from the Sunrise store, an insurance company paid the landlord for its loss. Catabran objected to introduction of this evidence by in limine motion and again at trial. The judge instructed the jury to consider the testimony only with regard to Catabran, not Emmets, but did not otherwise limit consideration of the evidence.

---

**2.** Clearly computerized records are not immune from human error. *See Manual for Complex Litigation Second* § 21.446 (1985).

Defendant argues that this testimony constituted evidence of "other crimes" and was inadmissible under Fed.R.Evid. 404(b). We review a district court's decision to admit evidence under Rule 404(b) for an abuse of discretion. *United States v. Espinoza*, 578 F.2d 224, 228 (9th Cir.), *cert. denied*, 439 U.S. 849, 99 S.Ct. 151, 58 L.Ed. 2d 151 (1978).

Rule 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Defendant argues that evidence that he misappropriated the carpeting from his landlord could lead a jury to convict based on criminal disposition.

■ However, the testimony is still admissible under rule 404(b) to show intent or plan. Admission is proper under this rule when: (1) the prior act is similar and not too remote in time; (2) proof of the prior act is clear and convincing; (3) the evidence is introduced to prove an element of the charged offense; and (4) the probative value outweighs any prejudice to the defendant. *United States v. Vaccaro*, 816 F.2d 443, 452–53 (9th Cir.1987). This circuit has repeatedly stated that Rule 404(b) is "an inclusionary rule," which admits evidence of other circumstances unless the evidence tends only to prove criminal disposition. *United States v. Ford*, 632 F.2d 1354, 1375 (9th Cir.1980), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981); *United States v. Diggs*, 649 F.2d 731, 737 (9th Cir.), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981). This interpretation vests the trial court with "wide discretion in deciding whether to admit such evidence." *Diggs*, 649 F.2d at 737.

■ The prosecutor contends that testimony that the defendant ordered employees to remove the carpet reveals his intent to conceal assets of the bankruptcy. Certainly, it corroborates the government's theory that the defendant planned to use Bedder Nights' assets to open Waterbed Liquidators, even if the prosecution could not establish that this particular item was part of the bankrupt corporation. The act occurred during the same period as the crime charged and is sufficiently similar to the concealment of assets to meet the requirements of Rule 404(b). Catabran has not shown that the prejudicial effect of the testimony outweighed its probative value. We conclude that the district court did not err in allowing the testimony.

### III. Denial of Motions for Severance and Mistrial

Catabran contends that the district court erred in denying his motions for severance under Rule 14 and mistrial once the court severed his co-defendant from the trial. Catabran asserts that the joint trial with its frequent limiting instructions confused the jury. He also contends that he was prejudiced by the district court's decision to continue his trial after severing Emmets from the case. He argues that he was prejudiced by the severance procedure because the jury would think that because the judge had severed Emmets but not Catabran, the judge must have believed that only Catabran was guilty.

### A. Standard of Review

Fed.R.Cim.Pro. 14 provides that "[i]f it appears that a defendant or the government is prejudiced by a joinder ... for trial together, the court may ... grant a severance of defendants or provide whatever other relief justice requires."

We review a district court's denial of relief for severance under Rule 14 for an abuse of discretion. *United States v. Sutton*, 794 F.2d 1415, 1427 (9th Cir.1986).

### B. Denial of Motions for Severance and Mistrial

In *United States v. Sutton*, 794 F.2d at 1427, we set forth the standard for assessing whether a district court has abused its

discretion in denying a Rule 14 motion. The test is:

"[W]hether a joint trial would be so prejudicial that the trial judge could exercise his discretion in only one way. Before this court will reverse a conviction because of a district court's refusal to grant severance, 'the defendant must show that failure to sever was so manifestly prejudicial that it outweighed the dominant judicial concern with judicial economy and compelled the exercise of the court's discretion to sever.'" The defendant must show a violation of one of his substantive rights ... in order to make a showing of such manifest prejudice.

*Id.* at 1427 (citations omitted).

█ Defendant in this case claims that failure to sever and continuation of the trial after severance and after dismissal of the conspiracy charge denied him a fair trial. The Supreme Court has recognized that when charges supporting the joint trial of defendants lack sufficient evidence and are dismissed, the judge should be particularly sensitive to the danger of prejudice. *Schaffer v. United States*, 362 U.S. 511, 517, 80 S.Ct. 945, 948–49, 4 L.Ed.2d 921 (1960). However, dismissal of a conspiracy charge does not require reversal or a mistrial as a matter of law. In *United States v. Valenzuela*, 596 F.2d 824 (9th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979), we held that failure to establish a conspiracy did not require reversal absent manifest prejudice. In *Valenzuela*, the defendant had not challenged the sufficiency of the substantive count and the evidence against him was strong. *Valenzuela*, 596 F.2d at 829. Even where the court actually finds misjoinder, the court will uphold a Rule 14 denial if there is strong evidence of guilt and the judge provided careful instructions. *United States v. Parson*, 452 F.2d 1007, 1008 (9th Cir.1971) (per curiam).

█ Under these cases, the dismissal of the conspiracy charge against both Emmets and Catabran and the severance of Emmets from the trial do not entitle Catabran to a reversal without showing manifest prejudice. *United States v. DeRosa*, 670 F.2d 889 (9th Cir.), *cert. denied*, 459 U.S. 993, 103 S.Ct. 353, 74 L.Ed.2d 391 (1982) sets forth guidelines for assessing whether a defendant has shown prejudice from joinder. Of primary concern is the jury's ability to compartmentalize the evidence against each defendant given its volume and limited admissibility. *DeRosa* suggests dividing the evidence presented into three categories: (1) incriminating evidence against defendant admissible even in a separate trial; (2) incriminating evidence inadmissible against defendant in a separate trial, but admitted with a limiting instruction in the joint trial; and (3) evidence inadmissible in a separate trial, not expressly related to the complaining defendant's guilt, but which creates a risk of guilt by association. *Id.* at 898.

Catabran has not demonstrated prejudice under the *DeRosa* analysis. In fact, the district court severed Emmets' trial because of the risk that the greater evidence against Catabran would prejudice Emmets. The defendant cites no specific evidence admitted against Emmets that prejudiced Catabran.

According to *DeRosa*, the court should also consider "the complexity of the case, the total weight of the evidence against each defendant, and the effectiveness of the jury instructions." *DeRosa*, 670 F.2d at 898. This case was not so complex that the jury would have difficulty determining the facts. There were only two defendants, the crimes occurred over a six-month period, and the prosecution's theory was straightforward and comprehensible. The district judge's description of the case as "somewhat complex" is insufficient, without more, to show that the jury could not follow the case and properly sort out the facts.

Consideration of the third and fourth *DeRosa* factors—weight of the evidence and effectiveness of jury instructions—does not help Catabran's cause. The district judge declared the evidence against Catabran to be overwhelming, and he severed Emmets' trial for fear that the Catabran evidence would prevent Emmets from receiving a

fair trial. He also carefully instructed the jury that Emmets would be tried later.

Ultimately, the question is whether the jury "could follow the court's instructions and appraise the evidence against each defendant separately." *United States v. Hsieh Hui Mei Chen,* 754 F.2d 817, 823 (9th Cir.), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985). Although this case was not totally devoid of confusion, and the judge did give frequent limiting instructions to protect both Emmets and Catabran, Catabran has not demonstrated manifest prejudice. We hold that the district court properly denied the appellant's motions for severance and mistrial.

## IV. Ineffective Assistance of Counsel

### A. Standard of Review

We review claims of ineffective assistance of counsel de novo. *Weygandt v. Ducharme,* 774 F.2d 1491, 1492–93 (9th Cir.1985). To prevail on such a claim, the defendant must show: "(1) specific acts and omissions of counsel that fall below a standard of professional reasonableness, and (2) that these acts 'prejudiced' the defendant because there 'is a reasonable probability that absent the errors the factfinder would have had a reasonable doubt respecting guilt.'" *Smith v. Ylst,* 826 F.2d 872, 875 (9th Cir.1987), *citing Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). Catabran has failed to identify any acts or omissions on the part of his attorney that prejudiced him at trial. We hold that the appellant was not denied effective assistance of counsel.

## CONCLUSION

We hold the district court did not abuse discretion in admitting the computer printouts, chart, or the testimony regarding the carpeting, or in denying Catabran motions for mistrial and severance. The appellant has also failed to show he was denied effec-

tive assistance of counsel. Catabran's conviction is AFFIRMED.